MICHEL BEAUVOIR, Plaintiff-Appellant, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—661

Opinion filed September 30, 1985.

Robert F. Lisco, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

James C. Franczek, Jr., and Bruce R. Alper, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff Michael Beauvoir filed his third amended complaint in four counts on May 6, 1983. He alleged that defendant Doris A. Smith slandered him, defendant John Bernat libeled him, and defendant Rush-Presbyterian-St. Luke's Medical Center (Rush) wrongfully discharged him in retaliation for filing worker's compensation claims. The trial court dismissed the complaint with prejudice. Plaintiff moved to vacate the dismissal, or to grant leave to amend. The trial court denied the motion. Plaintiff appeals from both the order dismissing the complaint and from the order denying his post-judgment motion.

Plaintiff alleged in count I of his third amended complaint that plaintiff and defendant Smith were both employed by defendant Rush in 1981, and that on July 16, 1981, Smith slandered him, falsely accusing him of coercing other employees of Rush to falsify results of laboratory tests in an attempt to defraud an insurance company of workers' compensation benefits, in the presence of eight other employees of Rush who are named in the complaint.

In count II, plaintiff alleged that on October 14, 1981, defendant Bernat, also employed by Rush, sent plaintiff a letter again falsely accusing plaintiff of coercing other employees to falsify test results. Plaintiff alleged that Bernat published the letter to his secretary and

to Juanita Woodson, and other persons whom plaintiff did not name.

In count III plaintiff alleged that he suffered additional special damages from the wrongful accusations.

In count IV of the third amended complaint, plaintiff alleged that Rush discharged him from his employment on July 16, 1981, "in retaliation [for] the fact that the Plaintiff continued to file claims for Workman's Compensation benefits ***." Plaintiff submitted a proposed amendment to count IV with his post-judgment motion, in which he alleged that he contracted hepatitis while working for Rush, and that prior to July 16, 1981, he filed workers' compensation claims on several occasions. Plaintiff alleged that before July 16, 1981, defendant Smith advised him that he would be fired if he continued to make claims for workers' compensation benefits.

Defendants responded to the third amended complaint with a "motion to dismiss and/or for summary judgment." Defendants supported their motion with the affidavits of six of the persons who, according to the complaint, heard Smith slander plaintiff. All six stated in their affidavits that they did not hear any conversation between Smith and plaintiff on July 16, 1981. Defendants also submitted the affidavit of the associate administrator of Rush's human resources department, who stated that the other two persons alleged to have heard Smith slander plaintiff were no longer employed by Rush. He stated that one had terminated her employment with Rush in 1979, two years before Smith's conversation with plaintiff, and the other worked on a different floor of a different wing of Rush, and would not have been required to work near Smith's office. Defendants also submitted the affidavit of Juanita Woodson, who stated that she never saw the allegedly libelous letter from Bernat to plaintiff. Finally, defendants attached a copy of the settlement contract under which plaintiff agreed to release all claims against Rush for workers' compensation in exchange for $25,000. Defendants stated that the settlement agreement was filed on September 1, 1981, six weeks after Rush discharged plaintiff. According to the settlement agreement, plaintiff was intermittently disabled for a total of 22 weeks between February 1979 and February 1980, and he was hospitalized in March 1980.

On August 30, 1983, the trial court dismissed count III of the complaint with prejudice. Plaintiff does not appeal from the dismissal of count III. The court also allowed plaintiff to take the depositions of defendants' affiants, but the court restricted the depositions to the content of the affidavits and the circumstances in which the affidavits were obtained. The court postponed decision on the motion for summary judgment on counts I, II and IV of the third amended com-

plaint.

Plaintiff took the depositions of six of defendants' affiants. All six stated that no notary public was present when they signed their affidavits, and that they were not put under oath before signing the affidavits. At the deposition, all six reaffirmed under oath the statements made in their affidavits. Plaintiff submitted his own counteraffidavit, in which he swore that defendant Smith called plaintiff into her office on July 16, 1981, and Smith accused plaintiff of perpetrating a fraud on the insurance company in the presence of Melva Larrieu. Plaintiff stated that "to the best of my knowledge and memory at the time," Smith repeated the accusations as they left the office, in the presence of the seven other individuals named in the complaint, who were in the hall near Smith's office. Plaintiff also stated that Juanita Woodson told him that in October 1981 she had seen a copy of the allegedly libelous letter Bernat sent plaintiff.

On November 14, 1983, the trial court dismissed counts I, II and IV with prejudice, and it denied plaintiff's motion for leave to amend count IV. Plaintiff filed a post-judgment motion to vacate the dismissal of counts I, II and IV, and for leave to amend count IV. The motion was accompanied by the proposed amendment of count IV. The trial court denied the motion and this appeal followed.

Defendants' "motion to dismiss and/or for summary judgment," on the basis of which the trial court dismissed the complaint, is in part a motion to dismiss for failure to state a claim (under Ill. Rev. Stat. 1983, ch. 110, par. 2—615), in part a motion to dismiss because the claim was released (under par. 2—619), and in part a motion for summary judgment (under par. 2—1005). Our supreme court has expressly disapproved the practice of bringing such hybrid motions. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 405-07, 312 N.E.2d 605.) However, we will address the motion on its merits, because it appears that plaintiff was not prejudiced by the hybrid nature of the motion. 57 Ill. 2d 398, 407, 312 N.E.2d 605.

## COUNT I

Defendants argue that count I must be dismissed because the affidavits and depositions establish that Smith's allegedly slanderous remarks were not published, and because Smith's remarks were conditionally privileged. Plaintiff contends that his counteraffidavit suffices to create an issue of fact regarding publication, and his allegations that Smith's remarks were made maliciously, in an inappropriate place, overcome Smith's conditional privilege.

Plaintiff alleged that Smith slandered him twice on July 16, 1981:

once in Smith's office, in the presence of Melva Larrieu, and a few minutes later outside her office, in the presence of seven other employees of Rush.

These allegedly slanderous remarks, which Smith made in the scope of her employment, are conditionally privileges unless plaintiff pleads facts which, if proved, would overcome the privilege. (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 150 N.E.2d 202.) The court in *Judge* set out the following elements of conditional privilege for defamatory statements:

> "[G]ood faith by the defendant, an interest or duty to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only." 17 Ill. App. 2d 365, 377, 150 N.E.2d 202.

Defendant Smith, as plaintiff's supervisor, had a duty to tell him the reasons for his discharge, and the allegedly slanderous remarks fulfilled that purpose. Remarks made within Smith's office were made on a proper occasion, in a proper manner and limited to proper parties, absent some facts from which a court could conclude that Melva Larrieu should not have been in Smith's office. Plaintiff alleged that Smith made her slanderous accusations maliciously and without adequate investigation. However, he did not allege any facts which would support a finding of malice: his bare assertion of malice is insufficient (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551, 229 N.E.2d 514), as is his allegation that Smith failed to make a proper investigation. (*Bloomfield v. Retail Credit Co.* (1973), 14 Ill. App. 3d 158, 167-68, 302 N.E.2d 88.) Therefore, we hold that the remarks defendant Smith allegedly made in her office were conditionally privileged.

Plaintiff contends that Smith's conditional privilege does not cover the remarks which, according to plaintiff's affidavit, she made outside of her office in a "loud and boisterous voice," since those remarks were not made in a proper manner and limited to proper parties. Even assuming that the co-worker's conditional privilege does not apply to these remarks, count I of the complaint must be dismissed on the motion for summary judgment because the affidavits and depositions establish that these allegedly slanderous remarks were not published.

Publication is an essential element of a cause of action for defamation. (*Ginsburg v. Black* (7th Cir. 1956), 237 F.2d 790, 793, *cert. denied* (1957), 353 U.S. 911, 1 L. Ed. 2d 665, 77 S. Ct. 669.) In order to prove publication, plaintiff must show that the allegedly slan-

derous remarks were communicated to some person other than plaintiff. (*Frank v. Kaminsky* (1884), 109 Ill. 26, 28.) Plaintiff argues that his affidavit sufficiently establishes that there is a genuine issue as to whether or not Smith published her remarks, because plaintiff swore in his affidavit that to the best of his knowledge and belief, eight other persons were present outside of Smith's office when Smith accused plaintiff of misconduct. Of these eight, six swore in their depositions that they had not heard any conversation between Smith and plaintiff on July 16, 1981. One was no longer employed by Rush on the date of the alleged publication, and the eighth person named was working on a different floor of a different building at Rush, and had no job duties which would require her to be near Smith's office.

■ On these facts no verdict for plaintiff could stand, so the trial court's entry of summary judgment was proper. "[W]here the pleadings, depositions and other evidence before the court in a motion for summary judgment show that at trial a verdict would have to be directed, entry of summary judgment is proper." *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 816-17, 416 N.E.2d 328.

■ ■ Plaintiff argues that the trial court committed reversible error when it restricted plaintiff's depositions of defendants' affiants to the contents of the affidavits and the circumstances in which the affidavits were taken. The trial court has wide discretion in determining the scope of discovery, and the trial court's decision will not be disturbed absent a clear abuse of discretion. (*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 260, 458 N.E.2d 115.) Defendants' affidavits establish that the defamatory statements were not published; the trial court restricted plaintiff's discovery to this issue, the sole issue remaining for decision on count I (and count II) of the complaint. We find no abuse of discretion. *Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 154-55, 334 N.E.2d 96.

■ Finally, plaintiff argues that defendants' affidavits are not properly before the court on the motion for summary judgment because the affiants stated in their depositions that they were not under oath when they signed the affidavits, and their signatures were not properly witnessed by a notary public. However, all of the affiants were under oath when their depositions were taken, and all of the affiants whose depositions were taken swore that all of the statements in their affidavits were true. The trial court may properly consider any depositions in the record when it rules on a motion for summary judgment. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) Even if the

trial court ignored all of the affidavits which, according to the depositions, were not properly sworn, it still properly entered summary judgment for defendants on the basis of the proper affidavits and the depositions. Therefore, we affirm the order of the trial court dismissing count I of plaintiff's third amended complaint.

## Count II

■■ Defendants argue that the trial court properly entered summary judgment for defendants on count II, because the affidavits establish that defendant Bernat did not publish his allegedly libelous letter. We agree.

Plaintiff stated in his counteraffidavit that Juanita Woodson told him she saw the letter in October 1981; plaintiff also alleged in his complaint that Bernat's secretary saw the letter. Bernat's publication of the letter to his secretary was conditionally privileged because, again, plaintiff does not allege any facts which would support an inference of malice, and because the publication was made properly in the course of Bernat's work for Rush. *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377, 150 N.E.2d 202.

Plaintiff contends that his statement in his counteraffidavit that Woodson told him she saw the letter suffices to create an issue of material fact as to whether the letter was published. According to Supreme Court Rule 191(a), "Affidavits in support of and in opposition to a motion for summary judgment *** shall *** consist *** of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (87 Ill. 2d R. 191(a).) Plaintiff's statements as to what Woodson told him constitute hearsay (*Nordlund v. Nordlund* (1983), 116 Ill. App. 3d 223, 228, 452 N.E.2d 18), and as such the statements are inadmissible except for the purpose of impeaching Woodson's testimony. (*Albertina v. Owens* (1971), 3 Ill. App. 3d 703, 704, 279 N.E.2d 70.) Plaintiff's statements cannot be used as proof of the matter asserted. Therefore, plaintiff has not submitted any evidence from which a court could conclude that Bernat's letter was published. The trial court would be required to enter a directed verdict for defendant on the basis of the affidavits and depositions before it, and accordingly we affirm the entry of summary judgment for defendants on count II.

## Count IV

Plaintiff contends that the trial court abused its discretion when it refused to allow plaintiff leave to amend count IV of his third

amended complaint. The trial court refused the post-judgment motion for leave to amend on the grounds that "an amendment *** could not bring about a cause of action being stated under the requirements of the *Kelsay* case." Plaintiff contends that his proposed amendment meets those requirements.

Plaintiff has alleged in his proposed amendment that while he was an at-will employee of Rush he filed workers' compensation claims, and Smith, as Rush's agent, warned him that if he continued filing workers' compensation claims, he would be fired. When the proposed amendment and the settlement agreement are considered together, it appears that plaintiff began filing workers' compensation claims in 1979 or 1980; subsequently, Smith told him not to file any more claims; he filed more claims while working at Rush; then, on July 16, 1981, he was fired; and on September 1, 1981, he entered into a settlement agreement with Rush.

■■ We believe that plaintiff's proposed amendment states a cause of action for retaliatory discharge, because he has stated facts from which a court could conclude that he was fired because he filed workers' compensation claims. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

■■ The trial court has broad discretion in its decisions on motions for leave to amend, and this court will not disturb the trial court's decision unless the trial court abused its discretion. (*Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 285, 170 N.E.2d 147, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029.) However, the trial court should exercise its discretion liberally in favor of allowing amendments if allowing the amendment will further the ends of justice. *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30.

Plaintiff submitted his proposed amendment shortly after the trial court dismissed his complaint. The amendment rectifies the defects of the prior complaint. Defendant does not argue that it has been prejudiced by any delay in presenting a complaint which adequately states a cause of action. In this circumstance, we cannot say that refusing to allow the amendment helped further the ends of justice.

Finally, defendant argues that the trial court order dismissing count IV of the third amended complaint without leave to amend must be affirmed because the retaliatory discharge claim is barred by the settlement agreement plaintiff and Rush entered into on September 1, 1981. The agreement states:

"Respondent [Rush] denies that petitioner [plaintiff] suffers from an occupational disease as alleged or that she [*sic*] was in

any way disabled as a result or [sic] exposure to an occupational disease hazard, as alleged, but to avoid further litigation the respondent agrees to pay and the petitioner agrees to accept the sum of $25,000.00 in a lump sum for 50% disability (Sec. 802) and any and all claims for occupational disease during employment by respondent in full settlement of any and all claims of any kind, nature and description, including medical expenses as a result of the alleged exposure and disability and all known or unknown injuries which allegely [sic] resulted from said alleged exposure and disability and petitioner hereby releases the respondent from any and all claims under the Workmen's Occupational Diseases Act of Illinois for said alleged exposure and disability and petitioner assumes to pay for all medical, surgical and hospital services incurred in connection with sid [sic] alleged exposure and disability. Review under Section 19(h) is hereby specifically waived."

The effect of a settlement agreement is controlled by the intent of the parties signing it. (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 440-41, 437 N.E.2d 817.) The release does not mention any claim for retaliatory discharge; defendant relies on the general release of "all claims of any kind" "to avoid further litigation" to establish that the release was intended to cover retaliatory discharge. As the court stated in *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696, 366 N.E.2d 430, "Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." Summary judgment is particularly inappropriate where the intent of the parties is at issue. (*State National Bank v. Kewanee National Bank* (1973), 16 Ill. App. 3d 272, 274, 305 N.E.2d 732.) We find that the settlement agreement only raises a question of the parties' intent, and that question should be determined by the trier of fact. The trial court decision dismissing the retaliatory discharge count of the complaint cannot be upheld on the basis of the settlement agreement. Therefore, we affirm the trial court order dismissing counts I and II, we reverse the trial court order which denied plaintiff leave to amend count IV of the third amended complaint, and we remand the case for further proceedings on count IV.

Affirmed in part, reversed in part, and remanded.

McNAMARA and RIZZI, JJ., concur.