**Jocelyn RILEY, Plaintiff–Appellant,**

**v.**

**AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant–Appellee.**

**No. 88–2837.**

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1989.

Decided July 26, 1989.

---

Daphne Webb, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for plaintiff-appellant.

Earl Munson, LaFollette & Sinykin, Madison, Wis., for defendant-appellee.

Before BAUER, Chief Judge,
CUMMINGS, Circuit Judge, and WILL,
Senior District Judge.*

CUMMINGS, Circuit Judge.

This appeal presents us with the responsibility of interpreting the consequences of plaintiff's legal representation. Plaintiff, Jocelyn Riley, initially filed a claim of sexual discrimination in violation of the Wisconsin Fair Employment Act ("WFEA"), Wis. Stats. §§ 111.31 *et seq.*, against her employer, American Family Mutual Insurance Co., on March 25, 1985, with the Equal Rights Division ("ERD") of the Wisconsin Department of Industry, Labor and Human Relations ("DILHR") alleging retaliation for a complaint of sexual harassment resulting in her constructive discharge. Her claim was designated ERD case # 8500634 and cross-filed with the federal Equal Employment Opportunity Commission ("EEOC") as EEOC case # 055851913 and is still pending before the ERD.

Plaintiff subsequently filed a complaint (No. 85–CV–3061) in Dane County, Wisconsin, Circuit Court on June 13, 1985, alleging violation of WFEA and several tort claims, later amending it on November 21, 1986, to eliminate the WFEA claim. On May 5, 1987, plaintiff's counsel, Daphne Webb, agreed to dismiss four claims in that state court action against the defendant voluntarily because she believed that the state

court would probably dismiss all claims but the first, which was an assault and battery claim, due to the "exclusivity of workers' compensation as a remedy for employer's torts" (R.18, ¶ 6). Plaintiff's counsel later agreed to dismiss the first claim as well as the other four provided that the dismissal would be without prejudice or costs.[1]

At the suggestion of the defendant's counsel, Webb further agreed to execute a release on behalf of her client, waiving all "claims in Case No. 85–CV–3061, in which case defendant would stipulate to a dismissal without prejudice and without costs." (R.19, p.2.) However, the release drafted by defendant's counsel and executed by both parties exceeded the original agreement between the parties by providing for a release of all claims against the defendant:

> relating in any way to her employment, or terms and conditions of employment, at American Family Mutual Insurance Company and the claims alleged in Case No. 85–CV–3061; EXCEPT THAT this release shall in no way preclude or affect the right of Jocelyn Riley to pursue and appeal her administrative claim against American Family Mutual Insurance Company now pending before the Wisconsin Department of Industry, Labor and Human Relations in the case entitled Jocelyn Riley v. American Family Insurance Company, ERD Case No. 8500634, EEOC Case # 055851913.

The order and stipulation dismissing the state action entered on May 12, 1988, also expanded on the initial consensus between the parties by providing for a dismissal of the "Complaint [including the WFEA claim], Amended Complaint, and each claim for relief contained therein ... on the merits" with prejudice subject to an exception mirroring the language of the release that the dismissal would not preclude the plaintiff from prosecuting and appealing her administrative claims before the ERD.[2]

---

\* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Otherwise the defendant would apparently be entitled to costs under Wis.Stat. § 814.03.

2. The stipulation provided:
   Notwithstanding the dismissal with prejudice as provided in paragraph 1, plaintiff shall not be prevented under any preclusion doctrine, including *res judicata* or collateral estoppel, from prosecuting and appealing her adminis-

Plaintiff's counsel purportedly agreed to a dismissal with prejudice relying on the representation of defendant's counsel that the phrase "with prejudice" "would not make any difference, as long as Riley would still pursue and appeal her administrative claim" (R. 19, p. 3).[3] Plaintiff's counsel was hardly an aggressive negotiator. When the dust settled in the negotiations, plaintiff had dismissed her state tort claims and WFEA action with prejudice and released all other claims against the defendant save her right "to pursue and appeal her administrative claim" pending before the Wisconsin ERD solely in consideration for defendant's agreement not to seek costs for the state court action.

Plaintiff requested and obtained a "right to sue letter" from the EEOC on March 22, 1988, and this Title VII action based on the same factual allegations as contained in the state court action and the ERD claim was filed on April 12, 1988. Defendant moved for summary judgment asserting that the state court dismissal precluded this Title VII suit based on the same facts or alternatively that the release signed by plaintiff waived all claims relating to her employment with the exception of the administrative claim pending before the ERD. The district court granted defendant's motion and dismissed the Title VII action without prejudice, reasoning that the release signed by plaintiff had waived all avenues of relief save the right to "pursue and appeal" her administrative claim before the ERD, which included the right to appeal an unfavorable decision of the ERD to the Wiscon-

sin courts or filing a Title VII claim *after* seeking EEOC review of the ERD determination. Plaintiff appeals the dismissal, contending the release and state court dismissal preserved her right to pursue a Title VII action without awaiting exhaustion of Wisconsin administrative remedies. We must decide whether the minimal language excepting plaintiff's administrative claim from the release is sufficient to preserve her Title VII action here.[4]

## A.

As an initial matter, both parties are in agreement that if this Title VII action was not preserved in the release, then it must be dismissed with prejudice. Judge Shabaz dismissed this action without prejudice based on his understanding that plaintiff could refile her Title VII action in federal court after the ERD rendered a final administrative decision and after plaintiff sought EEOC review of that decision pursuant to 29 C.F.R. § 1601.76.[5] Under Title VII, authorized state and local agencies are given an initial deferral period of at least sixty days to investigate a charge of discrimination. 42 U.S.C. § 2000e–5(d). Many states, including Wisconsin, have entered into work-sharing agreements with the EEOC which provide that the state agency will process certain charges and the EEOC all others. Under such agreements, the deferral period is waived by the state agency for those claims designated for initial processing by the EEOC, enabling the EEOC to begin processing the claim imme-

---

trative claims before the Equal Rights Division of the Wisconsin Department of Industry, Labor and Human Relations in *Jocelyn Riley v. American Family Mutual Insurance,* E.R.D. Case No. 8500634, EEOC Case No. 055851913.

**3.** Plaintiff's counsel seems to have placed a goodly amount of trust in opposing counsel as reflected in plaintiff's brief in opposition to defendant's motion for summary judgment which states that a dismissal with prejudice was agreed upon "only at defendant's counsel's behest, and with his assurances that there would be no preclusion arguments based on the phrase 'with prejudice'" (R. 19, p. 11).

**4.** Defendant's alternative arguments that this action is precluded as res judicata by the state

court action or waived under the language of the release collapse into a single interpretation of the nearly identical language contained in both the release and the dismissal.

**5.** 29 C.F.R. § 1601.76 provides:

The Commission shall notify the parties whose cases are to be processed by the designated, certified 706 agency of their right, if aggrieved by the agency's final action, to request review by the Commission within 15 days of that action. The Commission, on receipt of a request for review, shall conduct such review in accord with the procedures set forth in the Substantial Weight Review Procedures (EEOC Order 916).

diately. *EEOC v. Commercial Office Products*, 486 U.S. 107, ——, 108 S.Ct. 1666, 1670, 100 L.Ed.2d 96 (1980). Likewise, the EEOC will refer those charges which are allocated to the state agency for initial investigation under the work-sharing agreement to that agency, suspending its investigation until the 60–day deferral period has elapsed. Once the 60–day deferral period has elapsed or has been waived under the work-sharing agreement, the claim is deemed filed with the EEOC. *Commercial Office Products*, 486 U.S. 107, 108 S.Ct. 1666. Plaintiff has the right, though no duty, to request a right to sue letter from the EEOC after 180 days have elapsed from the date the charge was deemed filed with the EEOC provided the EEOC has not filed suit before that time. 29 C.F.R. § 1601.28(a). Alternatively, the plaintiff may await a final resolution of the claim by the EEOC while retaining the power to demand a suit letter at any time, provided the delay does not constitute laches. See, *e.g.*, *Kamberos v. GTE Automatic Elec., Inc.*, 603 F.2d 598 (7th Cir.1979), certiorari denied, 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981).

■ Here plaintiff's charge was initially filed with the ERD on March 25, 1985, and cross-filed with the EEOC on April 8, 1985. Well after 180 days from filing of the charge with the EEOC, the plaintiff received upon her request an EEOC right to sue letter on March 22, 1988, giving plaintiff ninety days from issuance of the letter to file a Title VII action against the defendant, or forfeit her cause of action. Having received the prerequisite notice from the EEOC (*Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)), the plaintiff was required to file this Title VII action within ninety days, regardless of the stage of the

ERD proceedings. Judge Shabaz's order dismissing this action without prejudice ignores the procedural consequences of delaying plaintiff's action until the ERD has completed its review. Although it is true that work-sharing agreements routinely allow state and federal agencies each the right to review the initial processing agency's resolution of the charge, *Commercial Office Products*, 486 U.S. at ——, 108 S.Ct. at 1670, where the EEOC has issued a right to sue letter, its review of the charge is terminated. 29 C.F.R. § 1601.28(a)(3).

B.

There is no question that plaintiff may waive her cause of action under Title VII as part of a voluntary settlement provided her consent to the release was voluntary and knowing. *Alexander*, 415 U.S. at 52, 94 S.Ct. at 1021. ("In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing.")[6] However, aside from this generally recognized proposition that waivers of federal rights must be knowing and voluntary, as this Court recognized in *Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 474 (7th Cir.1986), there is some tension in this and other Circuits surrounding the appropriate source of law applicable to interpretation of a waiver or settlement of Title VII and similar federal statutory rights, such as claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Some cases in this Circuit have indicated that a release of Title VII rights is to be governed by federal common law principles,[7] while other cases interpreting such settlements apply standard state

---

**6.** Prospective waivers would be unenforceable. *Id.*

**7.** *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir.1982); *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454–455 (7th Cir.1986); *Taylor v. Gordon Flesch Co.*, 793 F.2d 858 (7th Cir.1986); each holding that under federal law, oral settlements of Title VII claims are enforceable if knowing and voluntary. See also *Salmeron v. United States*, 724

F.2d 1357 (9th Cir.1983), *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981), *United States v. Trucking Employers, Inc.*, 561 F.2d 313, 318 (D.C.Cir.1977), *Cox v. Allied Chemical Corp.*, 538 F.2d 1094 (5th Cir. 1976), certiorari denied, 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978), and *Seredinski v. Clifton Precision Products Co.*, 776 F.2d 56 (3rd Cir.1985).

contract law principles.[8] In the context of waiver of claims under the ADEA, the Second and Third Circuits have explicitly endorsed a "totality of the circumstances" approach which, in addition to assessing the contractual sufficiency of the release, examines the factors surrounding its execution to determine whether it was signed knowingly and voluntarily. *Coventry v. U.S. Steel Corp.,* 856 F.2d 514 (3rd Cir. 1988) ("In light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary."). Accord, *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399 (2d Cir.1989). Among those factors found relevant to the inquiry by the Second and Third Circuits were: (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, (6) whether an employer encouraged or discouraged the plaintiff to consult an attorney, and (7) whether the plaintiff had a fair opportunity to consult an attorney. Similarly in *Runyan v. National Cash Register Corp.,* 787 F.2d 1039 (6th Cir.1986), certiorari denied, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986), the court also examined the plaintiff's education and his legal representation to determine whether plaintiff's release under ADEA was voluntary, in spite of the court's statement that ordinary contract principles should apply in determining whether an ADEA settlement and release is valid.

The Eighth Circuit seems to have rejected the totality of the circumstances approach in the context of Title VII where the language of the waiver is unambiguous. *Pilon v. University of Minnesota,* 710 F.2d 466 (8th Cir.1983). There the plaintiff signed a concededly unambiguous, general release of all claims against the defendant pursuant to the advice of her attorney, but claimed that she believed the release did not affect her rights under a consent decree entered into by the defendant in a separate proceeding. The Eighth Circuit refused to examine the subjective circumstances surrounding the plaintiff's release since the language of the release was unambiguous and as negotiated by plaintiff's attorney, plaintiff was presumed to know the contents of the release. "If fraud or duress were claimed, Pilon would of course be entitled to show by evidence that she had not voluntarily signed the release, however clear and unambiguous its language; here, however, her claim at most is merely that her lawyer improperly advised her as to the legal effect of the words of the release." *Pilon,* 710 F.2d at 468. This Court has similarly refused to allow a plaintiff to escape the consequences of a Title VII settlement entered into under the advice of the plaintiff's chosen counsel, although the Court was careful to note that competency of counsel is not an appropriate inquiry to consider in evaluating whether a settlement is knowingly reached. "[Plaintiff's] claim that the incompetency of his counsel prevented his knowing assent to the agreement is misguided. Besides striking us as the sort of collateral attack that defies reasonable limits, we do not regard competency of counsel as a relevant factor for district courts to consider in evaluating whether a settlement is knowingly reached." *Taylor v. Gordon Flesch Co.,* 793 F.2d 858, 864 (7th Cir.1986).

In *Morgan,* although strongly questioning the necessity of creating a federal rule to interpret Title VII settlements, this Court declined to resolve the choice of law issue definitively since the question concerning the authority of an agent to enter into a settlement agreement there was resolved similarly under both federal and state law. ("As a result, even under princi-

---

**8.** *Air Line Stewards Ass'n v. American Airlines, Inc.,* 763 F.2d 875, 877 (7th Cir.1985), certiorari denied, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Air Line Stewards Ass'n v. Trans World Airlines, Inc.,* 713 F.2d 319, 321 (7th Cir.

1983). See also *Schwartz v. Florida Board of Regents,* 807 F.2d 901 (11th Cir.1987); *Pilon v. University of Minnesota,* 710 F.2d 466 (8th Cir. 1983).

ples of federal common law compromise judgments depend on the actual authority of the person purporting to compromise the claim.") *Morgan*, 797 F.2d at 478. Neither party here addresses the choice of law issue, debating instead whether the language in the release is unambiguous or raises questions of material fact as to the intent of the parties and whether the release was executed by plaintiff knowingly and voluntarily.

█ Judge Shabaz held that the language of the release unambiguously waived all claims and causes of action except the administrative claim pending before the ERD. We must reluctantly agree. The right to pursue and appeal a claim before the ERD is a separate proceeding from a *de novo* WFEA or Title VII action. The language preserving Riley's right to pursue and appeal her administrative claim pending before the ERD enables Riley to await the decision of the ERD administrative law judge ("ALJ"), request review of the ALJ's decision by the DILHR's Labor and Industry Review Commission, seek further review of the ALJ's decision from a Wisconsin circuit court and appeal to the state appellate courts. Wis.Stat. § 111.395. Riley may also seek review of the ERD's decision by the EEOC, although such review at this point is unlikely given the fact that the EEOC has issued a right to sue letter. The release thus only preserved her right to receive an administrative determination of her claim and seek review of that determination through the Wisconsin courts. This Title VII action, however, is not an "appeal" from the ERD but a distinct remedial route which subjects her claim of discrimination to a *de novo* hearing before the district court. *Flowers v. Laborers International Union*, 431 F.2d 205, 208 (7th Cir.1970).

This plain reading of the release is further evidenced by the reference to the ERD and EEOC case numbers assigned to plaintiff's claim. The release signed by plaintiff excepted "her administrative claim against [the defendant] now pending before the [DILHR] in the case entitled Jocelyn Riley v. American Family Mutual Insurance

Company, ERD Case No 8500634, EEOC Case # 055851913." Plaintiff uses the same reference to the EEOC case file as evidence that she explicitly preserved her right to bring a Title VII action following EEOC review of her claim. This argument is contradicted by the language of the release referring to the administrative claim "now pending before the [DILHR]" and the specific case numbers. The EEOC case number merely acknowledges that plaintiff's claim was cross-filed with the EEOC as is required in the work-sharing agreement (R.32, exhibit, p. 2) and does not refer to any Title VII action in state or federal court. The processing of plaintiff's administrative claim entitled EEOC # 055851913 was terminated upon the issuance of a right to sue letter.

Under the circumstances of this case, where the language of the waiver is unambiguous, it is unnecessary to create a distinct federal body of law to interpret plaintiff's release of federal rights. However, consonant with the Supreme Court's directive in *Alexander*, some inquiry must be made to determine that plaintiff's assent to the unambiguous language was knowing and voluntary. This Court has defined the "knowing" requirement in the context of Title VII releases to mean " 'done voluntarily and purposely, and not because of a mistake or accident.' " *Taylor*, 793 F.2d at 863, citing *United States v. Jones*, 696 F.2d 479, 493 (7th Cir.1982), certiorari denied, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). Although the district judge did not expressly determine whether the release was given knowingly and voluntarily, the undisputed facts contained in the record before this Court are sufficient to satisfy the above standard.

█ Decisions involving similar facts are in accord that a plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress.[9] Any other principle would enable plaintiffs to avoid their obligations entered into on the advice of their attorneys by claiming they did not

**9.** *Runyan*, 787 F.2d 1039 (6th Cir.1986); *Pilon*, 710 F.2d 466 (8th Cir.1983); *Lyles*, 684 F.2d 501

believe they were releasing their rights, despite the clear language of the waivers. For the purposes of this case, where a plaintiff is represented by counsel who actively negotiates the release, plaintiff must be found to have executed the release or settlement voluntarily and knowingly, unless vitiating circumstances such as fraud or duress existed to nullify plaintiff's assent to the settlement. The fact that plaintiff's counsel may have inaccurately conveyed the effect of the release or failed to draft language adequate to protect plaintiff's Title VII rights may be remedied through a malpractice action, but not through judicial interpretation of plaintiff's subjective intent. *Taylor*, 793 F.2d at 864.

An inquiry into the subjective intent of the waiving party, as suggested here, would unduly hamper the voluntary settlement goals of Title VII (42 U.S.C. § 2000e–5(b)) by enabling plaintiffs to avoid the consequences of plain language through an examination of the plaintiff's state of mind while signing the release. However, the same may not be true where plaintiff was not represented by counsel (*Coventry*, 856 F.2d 514 (3rd Cir.1988)) and possessed a limited education (*Runyan*, 787 F.2d at 1044), executed a standard general release form prepared by the employer (*Cox v. Allied Chemical Corp.*, 538 F.2d 1094, 1098 (5th Cir.1976)), or was otherwise unable to appreciate the consequences of the release. Under the latter circumstances, the court may need to inquire beyond the state law requirements for a valid contract to fulfill the remedial policy of Title VII and prevent the involuntary or uninformed compromise of federal rights. However, in cases such as this one where plaintiff is represented by chosen counsel throughout negotiations and settlements, who was admittedly knowledgeable in the field of employment discrimination,[10] the waiver is presumptively informed and willing, absent circumstances such as fraud or duress which would violate state contract principles as well as federal policy behind such waivers. Riley does not assert any fraudulent or coercive behavior on the part of the defendant nor that she had an inadequate opportunity to consult with her attorney or that her attorney colluded with the defendant.

This holding must be reconciled with *Salmeron v. United States*, 724 F.2d 1357 (9th Cir.1983), relied on by plaintiff, which involved a suit for damages under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, and for violation of the plaintiff's civil and constitutional rights resulting from the deprivation of the company of his children by the government as part of the Witness Protection Program.[11] Prior to filing the suit, the plaintiff had been required to release the government from any liability for the relocation of his children. There the court said: "although legal representation is an important factor in assessing the voluntariness of a release of federal rights, it is not dispositive * * *. [Plaintiff's] execution of the release might have been coerced, even though [plaintiff's] counsel advised him to sign it." Here, as in *Salmeron*, the mere fact of legal representation would be insufficient to establish an informed, voluntary waiver if other factors such as coercion, as possibly involved in *Salmeron*, or fraud were present to nullify any voluntariness of the consent. Further, a more stringent examination of the plaintiff's voluntariness may have been warranted under the circumstances of *Salmeron* where the plaintiff was required to "choose" between signing a release of claims against the government or prolonging the separation from his children indefinitely until the matter could be resolved through the courts. As the Supreme Court has recognized, "there is no universal standard that must be applied in every situation where a person forgoes a constitutional right." *Schneckloth v. Bustamonte*, 412 U.S. 218, 245, 93 S.Ct. 2041, 2057, 36 L.Ed.2d 854 (1973).

(7th Cir.1982); *Fulgence*, 662 F.2d 1207 (5th Cir.1981).

**10.** The defendant notes in its brief that plaintiff's attorney stated in a brief filed in district court that she has "practiced employment discrimination law before the EEOC since 1973 and ha[s] represented charging parties in several hundred cases filed with that agency" (Br. at 15, n. 3).

**11.** Pub.L. No. 91–452, §§ 501–04.

Plaintiff also contends that the release of her Title VII rights was invalid as unsupported by consideration. *Maynard v. Durham & S.R. Co.*, 365 U.S. 160, 162–163, 81 S.Ct. 561, 562–563, 5 L.Ed.2d 486 (1961). Defendant does not dispute the proposition that releases of federal rights must be supported by consideration, but insists that the release was executed in return for defendant's agreement to refrain from seeking costs following the dismissal of the state court action. Plaintiff explains that this consideration was given only in return for dismissing the state court action with prejudice. The release, however, does not assign individual consideration to each claim waived by the plaintiff. Given that the release as a whole was supported by some consideration, plaintiff cannot attack the validity of her release based on the retrospective inadequacy of the settlement. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450 (7th Cir.1986).

For the foregoing reasons the decision of the district court is affirmed insofar as it holds that plaintiff has waived her right to bring this Title VII action; the cause is remanded for the entry of a judgment of dismissal with prejudice pursuant to the release.