**Mark Patrick BROOKS, Plaintiff,**

**v.**

**ZENITH ELECTRONICS CORPORATION, Coleman Shearrill, John Kaminski, and Henry R. Acuna, Defendants.**

**No. 92 C 2689.**

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1993.

Kenneth M. Brown, Jill Ann Coleman, Neal, Gerber & Eisenberg, Chicago, IL, for plaintiff.

Mark Patrick Brooks, pro se.

John L. Collins, Lee P. Schafer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is defendants' motion for summary judgment. For the following reasons the motion is granted.

## DISCUSSION

Plaintiff Mark Patrick Brooks ("Brooks") began working for defendant Zenith Electronics Corporation ("Zenith") on May 20, 1990 as a tube handler, which entailed turning televisions tubes on an assembly line and carrying the tubes from one part of the line to another. On August 9, 1990, a seventy-pound television tube that Brooks was carrying imploded, injuring Brooks left arm and wrist. Brooks was admitted and treated at a hospital for his injuries. According to Brooks, defendants John Kaminski and Henry R. Acuna, physicians employed by Zenith, insisted that Brooks be released from the hospital that same day. Although impaired by a cast on his left arm, Brooks returned to Zenith on August 13, 1990, at which time he was assigned to "light duty" work. On September 21, 1990, Brooks' cast was removed, and Zenith reassigned Brooks to his prior duties.

Fearful of being injured by another imploding television tube, Brooks sought temporary reassignment to some other duty. His requests were refused. On January 5, 1991, Brooks experienced pain in his arms and left wrist; he was examined by a Zenith physician, who told Brooks he could resume work the next day. On January 16, 1991, a Zenith physician examined Brooks' wrist and told him he could resume his normal duties. Still suffering from fear and stress from the August 9 implosion, Brooks sought the opinion of his own physician, who allegedly advised Brooks not to work for several days. Brooks followed his physician's advice and was terminated on January 24, 1991, pursuant to the terms of a collective bargaining agreement, for missing five consecutive days of work without having obtained a leave of absence.

On April 5, 1991, Brooks filed a workmen's compensation claim against Zenith for the injury to his left arm. Shortly thereafter, on April 24, 1991, Brooks filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Zenith discriminated against Brooks because he is black. In connection with his claims, Brooks retained the services of an attorney named Kenneth Givens ("Givens").

Desperate for money, Brooks urged Givens to settle his workmen's compensation claim. On May 9, 1991, Brooks went to Givens' office, where Givens presented Brooks with a document entitled "Release of All Claims." Brooks did not immediately sign this document, but instead brought the release to the EEOC. An EEOC supervisor informed Brooks that to preserve his discrimination claim the release would need to be modified, whereupon the EEOC supervisor added to the release "I do not intend this release to include any claims that I may have under EEOC charge number 21091 1338." Although Brooks had this discussion with the EEOC supervisor, and although he possessed the modified release, Brooks nevertheless returned to Givens' office and signed an original, unmodified copy of the release. Brooks did not inform either his attorney or Zenith about the EEOC proposed modifications. The original executed release was witnessed and notarized.

Brooks has filed the complaint *sub judice* alleging four separate counts. Counts I and II are federal law claims, and counts III and IV are based on state law. Count I alleges Zenith discriminated against Brooks because of his race in violation of Title VII. Count II is a 42 U.S.C. § 1981 claim, which alleges that Zenith and the individual defendants discriminatorily terminated plaintiff. Brooks contends in Count III that Zenith and the individual defendants intentionally inflicted emotional distress on Brooks, and count IV alleges that Zenith terminated Brooks because of his stated intent to file a workers' compensation claim.

Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's

position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir. 1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

■ The primary basis for defendants' motion for summary judgment is the release signed by Brooks. When evaluating the effectiveness of an employee's settlement of a Title VII claim, the court must "determine at the outset that the employee's consent to the settlement was voluntary and knowing." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). As a general proposition, even if the language of the settlement agreement is found to be unambiguous, "some inquiry must be made to determine that plaintiff's assent to the unambiguous language was knowing and voluntary." *Riley v. American Family Mutual Ins. Co.,* 881 F.2d 368, 373 (7th Cir.1989). The knowing requirement in the context of Title VII waivers assures that the release was executed purposely, and not because of a mistake or accident. *Riley,* 881 F.2d at 373. This assurance, however, is presumptively met when an employee is represented by counsel, who presides over the execution of the release. When represented by an attorney, an employee must be found to have executed a release voluntarily and knowingly, "unless vitiating circumstances such as fraud or duress existed to nullify [the employee's] assent to settlement." *Riley,* 881 F.2d at 374.

■ Brooks was represented by an attorney throughout the entire negotiations for, and execution of, the release. Nevertheless, Brooks contends that he did not know that signing the release would have any legal significance, and claims that he agreed to the settlement because he was desperate for the money allegedly owed him by Zenith. Because Brooks was represented by counsel, however, his subjective belief as to the significance of the release is irrelevant, and the duress allegedly suffered by Brooks is insufficient to nullify the terms of the release. *Id.* ("inquiry into the subjective intent of the waiving party [who is represented by counsel] ... would unduly hamper the voluntary settlement goals of Title VII," and duress, for purposes of vitiating a written waiver of claims, means "coercive behavior on the part of the defendant" or allegations of "inadequate opportunity to consult with [an] attorney or collusion with the defendant").

Even if the court were to inquire into Brooks' subjective beliefs, the undisputed facts of this case belie Brooks' claim that his execution of the release was not knowing. Although Brooks made modifications to the release on the advice of the EEOC supervisor, he admits that he did not tell either his attorney or Zenith about such modifications; instead, after making his alleged changes to the release, Brooks went directly to his attorney's office and signed an unmodified, original copy of the release. Brooks, who has completed educational courses in professional diesel truck driving and paralegal studies, knew what he was doing; he wanted to "get [his] money," and to do so he had to sign the release. Having done so, he knowingly and voluntarily waived his discrimination claims.

## CONCLUSION

Brooks released Zenith and the individual defendants of all claims contained in his com-

plaint when he executed the Release of All Claims on May 20, 1991. For this reason, the court grants defendants' motion for summary judgment.

IT IS SO ORDERED.