**Emil G. WISCH, Plaintiff,**

v.

**WHIRLPOOL CORPORATION,
Defendant.**

No. 94 C 7430.

United States District Court,
N.D. Illinois,
Eastern Division.

June 6, 1996.

William T. Coleman, Law Offices of William T. Coleman, Chicago, Illinois, for Plaintiff Emil G. Wisch.

David J. Parsons, Frederick L. Schwartz, Wildman, Harrold, Allen and Dixon, Chicago, Illinois, for Defendant Whirlpool Corporation.

## MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Emil G. Wisch ("Wisch") brought this action under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12117 et seq. Wisch alleges that defendant Whirlpool Corporation ("Whirlpool") violated the ADA, following a short term disability leave by Wisch, by failing to allow him to return to work as a service technician or alternatively, by failing to allow Wisch to return to work in a sedentary position. Whirlpool denied the

allegations and a jury trial was set for Monday, May 20, 1996, at 10:15 a.m.

At the final pretrial conference held on May 14, Whirlpool's counsel advised Wisch's counsel and the court that it had just learned that Wisch had executed a release in connection with the resolution of a worker's compensation claim, which it believed might also bar the ADA claim. Whirlpool's counsel stated that he had not yet seen the release but would present a motion to add an additional affirmative defense as soon as a copy of the document was obtained. The court advised the parties that the jury trial would proceed as scheduled.

On May 20, at the court's 9:30 a.m. motion call, Whirlpool presented its Motion for Leave to File a Supplemental Affirmative Defense Instanter pursuant to Fed.R.Civ.P. 15(a). Wisch did not object to the filing of the Supplemental Affirmative Defense, and the parties agreed that the issue of the release would be decided by the court, without a jury.

The jury trial commenced on May 20, and the jury was instructed and began its deliberations on the afternoon of May 22. After the jury began its deliberations, the court commenced a bench trial on the issue of the release in a separate courtroom so as to avoid any possible contact with the jury. During the bench trial, the court received a note stating that the jury had reached a verdict. The court recessed the bench trial to receive the jury's verdict. The jury found in favor of Whirlpool and judgment was entered on the verdict.

The jury's verdict did not moot the release issue. Wisch requested the court to decide the release issue because count II of Wisch's complaint had previously been dismissed.[1] In the event of a possible appeal, Wisch desires to have all issues resolved at one time. The court agrees that this makes sense in order to avoid piecemeal appeals. As a result, the court concluded the evidentiary hearing on the release issue following receipt of the jury's verdict. This memorandum opinion and order is prepared pursuant to Fed.R.Civ.P. 52.

## II. THE TRIAL OF THE RELEASE ISSUE

■ Three witnesses testified at the trial of the release issue: Attorney Jeanmarie Calcagno for Whirlpool and Emil G. Wisch and attorney Richard Alan Slovin for Wisch. Because this issue constitutes an affirmative defense, Whirlpool has the burden of proof by a preponderance of the evidence that the release was effective. *Willis v. United States,* 1995 WL 516393, p. 2 (7th Cir.1995).

Wisch brought a worker's compensation claim on January 20, 1994, as Case No. WC 2883. Wisch was represented by two law firms in connection with that action: Richard Slovin of Steinberg, Burtker & Grossman, Ltd. and Lori Stelle of Jaffe, Stelle and Jaffe. Whirlpool was represented by Jeanmarie Calcagno at Stevenson, Rusin and Friedman. The worker's compensation action was settled on or about July 19, 1995. The parties executed a document entitled Settlement Contract Lump Sum Petition and Order. (Dx 4) (hereafter "Settlement Contract").

At the time of settlement, Whirlpool paid Wisch the sum of $28,854.75, from which attorneys' fees and court reporters' fees were deducting, leaving Wisch with a net recovery of $22,963.80. Ms. Calcagno testified that the settlement was arrived at on the basis of arms length negotiations and that while both she and Wisch's worker's compensation attorney were aware of Wisch's federal claim under the ADA, no request for an exclusion of the ADA claim was ever made. Where requested and negotiated, such carveouts are sometimes made. She explained that the release language was not standard on the Illinois Industrial Commission form, but was inserted by her law firm for this case. She explained that this matter was highly disputed and no specific loss or specific wage differential was involved. She signed the release on behalf of Whirlpool on July 18, 1995.

---

**1.** Wisch's complaint also included a count III for punitive damages arising out of count II, which Magistrate Judge Edward A. Bobrick dismissed on January 11, 1996. No order was previously entered regarding count III. The court adopts Judge Bobrick's reasoning and dismisses count III.

Ms. Calcagno acknowledged that there were no discussions of the ADA claim at the time of the settlement and that she was aware of the ADA claim at the time she drafted the Settlement Contract. She did not represent Whirlpool in the defense of the ADA claim.

Mr. Wisch testified that he instructed Slovin to be sure that the release would not affect his ADA claim. He was told by Slovin that the Settlement Contract would not affect his ADA claim. He does not believe he read the entire document, but signed it of his own free will. His understanding was that the ADA claim remained intact.

Mr. Slovin also testified for Wisch. He was brought into this matter for his expertise in worker's compensation. He was aware of the ADA claim. He asked Ms. Calcagno whether she was interested in a joint settlement of both the workers' compensation and ADA claims and she said she had no authority to settle the ADA claim. Thereafter, there was no further discussion of the ADA claim. Mr. Slovin told Mr. Wisch that the release would not cover the ADA case. All correspondence between Mr. Slovin and Ms. Calcagno specifically referred to settlement of the workers' compensation claim.

### III. *THE LANGUAGE OF THE SETTLEMENT CONTRACT*

The specific language of the Settlement Contract which is at issue is as follows:

"Terms of settlement: Respondent to pay and petitioner to accept $28,854.75 in full and final settlement of any and all claims under the Workers' Compensation and Occupational Disease Acts for all accidental injuries allegedly incurred as described herein and including any and all results or developments, fatal or non-fatal, allegedly resulting from such accidental injuries. Issues exist between the parties as to whether petitioner has incurred injuries to the degree alleged and whether or not such injuries are compensable, and this settlement is made to amicably settle all issues. This settlement includes liability for temporary, total compensation and all medical, surgical and hospital expenses, past or future, for all of which petitioner expressly assumes responsibility. All

rights under §§ 4, 8, 16 and 19 of the Act are expressly waived by the parties. This settlement is based on petitioner's present condition and specifically includes any other accident, injury, aggravation or onset of symptoms to the date of this settlement. This settlement is made to end all litigation between the parties. This settlement represents: an amicable resolution of all disputed issues and a purchase of peace on any and all claims which petitioner has or may have against Respondent.

(A report of a doctor who examined or treated the employee is attached.)

| | |
|---|---|
| Total dollar amount of settlement: | $28,854.75 |
| Deductions: Attorneys' fees: | $ 5,770.95 |
| Court Reporter: | $ 120.00 |
| Amount of money Employee will receive: | $22,963.80 |

I UNDERSTAND THAT I CAN PRESENT THIS SETTLEMENT TO THE ILLINOIS INDUSTRIAL COMMISSION IN PERSON. I UNDERSTAND THAT BY SETTLING THIS CLAIM I AM GIVING UP:

(1) MY RIGHT TO SUBMIT MY CASE TO ARBITRATION;

(2) MY RIGHT TO HAVE THE DECISION OF THE ARBITRATOR SUBMITTED TO THE COMMISSION FOR REVIEW;

(3) MY RIGHT TO ANY FURTHER MEDICAL TREATMENT FOR THE RESULTS OF THIS INCIDENT AT MY EMPLOYER'S EXPENSE;

(4) THE RIGHT TO ADDITIONAL BENEFITS IF MY CONDITION WORSENS FURTHER AS A RESULT OF THIS INCIDENT.

I HAVE READ THIS DOCUMENT. I UNDERSTAND ITS TERMS AND SIGN IT VOLUNTARILY. I REQUEST THAT A LUMP SUM ORDER BE ENTERED ON THE GROUNDS THAT I BELIEVE IT TO BE IN MY BEST INTEREST.

33/ PETITIONER'S SIGNATURE /s/ Emil G. Wisch Date 7/19/95"

### IV. *FINDINGS AND CONCLUSIONS*

■ The court finds that the Settlement Contract was intended to be a general release of all of Wisch's workers' compensation claims, but not a general release of any other

claims, including the ADA claims. The negotiation of the workers' compensation issue was between two attorneys who had been retained solely to resolve the workers' compensation claim. Ms. Calcagno advised Mr. Slovin that she did not have authority to negotiate a global settlement. As a result, the court finds that the parties only intended to resolve all workers' compensation related claims between the parties pursuant to the Settlement Contract.

The document supports this conclusion. The consideration of $28,854.75 was "in full and final settlement of any and all claims under the Workers' Compensation and Occupational Diseases Acts ..." In the portion of the document in which Wisch gives up specific rights, no mention is made of giving up his rights to proceed with the ADA lawsuit; rather, he was giving up his "right to submit [his] case to arbitration." The ADA claim was not subject to arbitration.

The document when read as a whole and in the context of its preparation makes it clear that the parties were entering into a lump sum settlement of Wisch's workers' compensation claims.

In determining whether the Settlement Contract signed by Wisch in a worker's compensation case in 1995 constituted a general release of all claims, including the ADA claim that plaintiff had filed in court, this court must first determine whether the Settlement Contract signed by plaintiff was clear and unambiguous on its face. The determination of whether or not a contract is ambiguous is an issue of law for the court to decide. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill.App.3d 882, 210 Ill.Dec. 257, 261, 652 N.E.2d 1233, 1237 (1st Dist.1995). There has been a split of authority in Illinois regarding "whether a court may provisionally consider extrinsic evidence to ascertain the definition of terms used by the parties in a contract in an effort to determine whether the contract is ambiguous." *Id.* at 261, 652 N.E.2d at 1237; *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 620-2 (7th Cir.1989).

The majority of Illinois courts support the provisional admission approach, which takes into account the context under which the contract was made and the understanding that the parties appeared to have at the time of its execution. *Id.*, 210 Ill.Dec. at 261, 652 N.E.2d at 1237. The provisional admission approach has been favored by courts because of the belief that "the meaning of words cannot be ascertained in a vacuum." *Id.* at 261, 652 N.E.2d at 1237. Furthermore, Illinois courts have consistently held that "the intention of the parties controls the scope and effect of the release: such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction. Under this approach, Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." *Gladinus v. Laughlin*, 51 Ill.App.3d 694, 9 Ill.Dec. 173, 175, 366 N.E.2d 430, 432 (5th Dist.1977).

The effect of a settlement agreement is controlled by the intent of the parties signing it. *Beauvoir v. Rush–Presbyterian–St. Luke's Medical Center*, 137 Ill.App.3d 294, 92 Ill.Dec. 110, 116, 484 N.E.2d 841, 847 (1st Dist.1985). "Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." *Id.*

The court finds that the parties did not intend to release the ADA claim as part of the Settlement Contract. The language of the Settlement Contract is not a clear, unambiguous general release of 'any and all' possible claims that he has against Whirlpool Corporation. Rather, it is a general release of any and all claims that he may have under the Workers' Compensation Act. Contrary to what Whirlpool argues, the contract that Wisch signed is distinguishable from the release in *Brooks v. Zenith Electronics Corporation*, 830 F.Supp. 1138 (N.D.Ill.1993). In *Brooks*, the plaintiff filed a worker's compensation claim against his employer after he was injured on the job. He subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that his employer had dis-

criminated against him when he returned to work (after his injury) because he was black. His employer later presented him with a document entitled "Release of All Claims". The plaintiff was advised by counsel that he would have to modify such a general release if he was to ensure that it did not waive the claim that he had filed with the EEOC. Plaintiff failed to make any such modifications. He signed the "general release" document and effectively "released all claims", including the claim with the EEOC.

Whirlpool maintains that *Brooks* is analogous to this case, and that the court must hold that Wisch waived his ADA claim if it finds that he did so "knowingly and voluntarily". However, the holding in *Brooks* is not controlling because the contract which the plaintiff signed in *Brooks* was unambiguous on its face, and the plaintiff was aware that it was a general release of all claims.

▪ In addition, Wisch points out that the enforcement provisions of the ADA, 42 U.S.C. Section 12101, et. seq. are those of Title VII, 42 U.S.C. Sec. 2000e, et seq. An individual may not waive his or her rights under Title VII unless he or she does so voluntarily and with full knowledge. *Riley v. American Family Mut. Ins.*, 881 F.2d 368 (7th Cir.1989). Alleged waivers of claims made under the ADA should be held to similar standards as those made under the ADEA (which is also enforced by the provisions of Title VII), as the policy rationale behind Congress' enactment of the ADEA is parallel to the rationale behind the enactment of the ADA. Waivers of claims made under the ADEA must meet specific statutory requirements listed in 29 U.S.C.A., Section 626(f)(1) to be considered "knowing and voluntary", and thus valid. These alleged waivers are commonly tested under a "federal totality of circumstances" approach which takes into account factors such as (1) the employee's education and business experience; (2) the clarity of the agreement (e.g. whether the release language specifically mentioned the release of an ADEA claim); and (3) whether the individual was represented by counsel. "The totality of the circumstances approach is consistent with the strong congressional purpose underlying the

ADEA to eradicate discrimination in employment." *Pierce v. Atchison, Topeka, and Santa Fe Railway Co.*, 65 F.3d 562 (7th Cir.1995). The ADA is aimed at eradicating discrimination against disabled people in areas such as the workplace, and its purpose is parallel to that of the Age Discrimination in Employment Act (which aims to eradicate discrimination against people due to their age in the workplace); thus, a similar test should be applied.

Under the totality of circumstances approach, the court finds that Wisch did not knowingly and voluntarily consent to waive his ADA claim. The Settlement Contract did not refer to his ADA claim. Illinois courts have held that "when an instrument contains recital of, or other reference to, specific claims and also words of general release, the words of general release are limited to the particular claims to which reference is made." *Gladinus v. Laughlin*, 51 Ill.App.3d 694, 9 Ill.Dec. 173, 175, 366 N.E.2d 430, 432 (5th Dist.1977). Thus, even if the court was to find that the Settlement Contract contained "words of general release" these words do not reach any further than the single specific claim which was mentioned— that is, the workers' compensation claim.

▪ The release of a federal right must be supported by consideration. *Maynard v. Durham and Southern Railway Co.*, 365 U.S. 160, 164, 81 S.Ct. 561, 562–63, 5 L.Ed.2d 486 (1961); *Riley v. American Family Mutual Ins.*, 881 F.2d 368, 374 (7th Cir.1989). The language of the Settlement Contract does not provide consideration for any claims outside the workers' compensation claim. "Respondent to pay and petitioner to accept $28,854.75 in full and final settlement of any and all claims *under the Workers' Compensation and Occupational Disease Acts ...*". (Dx4). Because the language of the Settlement Contract does not provide Wisch any consideration in exchange for the waiver of his ADA claim, the court also holds that the Settlement Contract fails for lack of consideration to release the ADA claim.

## V. CONCLUSION

For the reasons stated herein, **Whirlpool's supplemental affirmative defense is DE-**

NIED and count III of Wisch's Complaint is DISMISSED WITH PREJUDICE.

SO ORDERED.