Rayford L. **TAYLOR,**
**Plaintiff-Appellant,**

v.

**GORDON FLESCH COMPANY, INC.,**
**Defendant-Appellee.**

No. 85–2516.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1986.

Decided June 16, 1986.

Jacqueline Macaulay, Borns, Porter, Macaulay & Jacobson, Madison, Wis., for plaintiff-appellant.

Michael H. Auen, Foley & Lardner, Madison, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and BARKER, District Judge.[*]

BARKER, District Judge.

Plaintiff, Rayford L. Taylor, filed a complaint against his former employer, Gordon Flesch Company, Inc. ("the Company"), alleging racial harassment, denial of training opportunities, promotions, and appropriate compensation, and constructive discharge in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e–17 (1982), and 42 U.S.C. § 1981 (1982). The Company filed a counterclaim seeking an order enforcing an alleged settlement agreement and moved for summary judgment on its counterclaim. Taylor also moved for summary judgment, alleging that the Company prevented him from discovery relating to the Company's counterclaim by invoking the attorney-client privilege. The District Court granted summary judgment to the Company and dismissed Taylor's complaint with prejudice. The District Court also ruled that Taylor's motion for summary judgment was not ripe. We AFFIRM.

## I.

The facts, viewed in the light most favorable to Taylor, are as follows: On May 11, 1984, Taylor filed a race discrimination charge against the Company with the Madison Equal Opportunities Commission ("MEOC"). On June 27, 1984, the Company filed a written response with the MEOC disputing Taylor's claims.

The MEOC scheduled a fact-finding conference for July 18, 1984. Prior to that conference, Taylor reviewed the Company's response and discussed the case with his attorney, Agnes Rona ("Rona"). In evaluating Taylor's claim and his likelihood of recovery, Rona advised her client of her conclusion that Taylor had probably been badly treated, not because of his race, but because the Company was badly run, and that, in terms of a possible financial recovery against the Company, "the money just wasn't there."

When the parties arrived for the MEOC fact-finding conference, they entered into settlement discussions. Rona represented Taylor in these discussions. The Company was represented by Michael Auen ("Auen"). After some discussion, Auen proposed a settlement on the following terms:

1. Taylor would leave his job at Gordon Flesch Company and not seek reemployment with the Company.

2. Taylor would withdraw all pending charges and provide the Company with a full and complete release of all claims.

3. The Company would not contest Taylor's eligibility for unemployment compensation benefits.

4. The Company would pay Taylor $1,300.00.

5. The Company would furnish Taylor with a letter of reference satisfactory to his counsel.

6. The MEOC would not be a party to the settlement.

7. Taylor would not return to work except to turn in his tools.

With advice of his counsel, Taylor accepted the Company's oral settlement offer.

Rona agreed to prepare the initial draft of the settlement agreement and release. Upon notification that a settlement agreement had been reached, the MEOC cancelled the fact-finding conference and ceased processing Taylor's charge.

On July 18, 1984, in line with the settlement agreement, Taylor applied for unemployment compensation, and the Company did not contest his eligibility for benefits. Taylor drew benefits for the period beginning with the week ending July 20, 1984, through the end of December, 1984. Tay-

* The Honorable Sarah Evans Barker, District Judge of the United States District Court for the Southern District of Indiana, sitting by designation.

lor did not return to work after July 18, 1984, except to turn in his tools on July 22, 1984.

Rona prepared a draft of the settlement agreement and submitted it to her client. Taylor signed it, and the draft was then sent by Rona to Auen.

Auen did not submit Rona's draft to his client to review or to sign. Instead, Auen proposed alternative settlement language and sent it to Rona. Auen's draft contained a variety of stylistic changes, but was nonetheless, in all material respects, identical to Rona's draft.

Rona sent Auen's draft to Taylor, but Taylor, noting some changes in the Auen draft, refused to sign it, allegedly because he was "bothered" by some of the changed language regarding the release of claims against the Company. (Appellant's Brief, p. 6).

Thereafter, by coincidence, Taylor met Auen when Taylor was testifying against the Company at an unemployment compensation hearing on behalf of another employee. In conversations between them, Taylor informed Auen that the settlement in his case had not been "finalized" and that Taylor was reluctant to sign Auen's draft. As of this time, Rona had also apparently regarded the settlement agreement as "not final." (Appellant's Brief, p. 7).

Sometime after the date of this unemployment compensation hearing, Taylor engaged the lawyer who had been representing his friend at that hearing, to replace Rona. Taylor's new counsel told Auen that Taylor had found the Company's proposed draft of the settlement agreement unacceptable and would not enter into a settlement which required a full release of all his claims against the Company. In addition, Taylor offered to return to work. (Appellant's Brief, p. 7).

In October, 1985, the Company filed with the MEOC its motion to enforce the settlement and dismiss the complaint. Taylor opposed the motion and obtained a notice of right to sue from the Equal Employment Opportunity Commission. Taylor then filed his lawsuit in the District Court. After opposing summary judgment motions were filed, the District Court granted summary judgment in favor of the Company, dismissed Taylor's judgment motion for lack of ripeness, and dismissed Taylor's complaint with prejudice. Taylor appeals from the Order granting summary judgment in favor of the Company.[1]

## II.

We review a grant of summary judgment by applying the same standard that a District Court must: taking all of appellant's allegations as true and drawing all inferences from the underlying facts contained in the record in favor of appellant, are there any genuine issues of material fact to be resolved? If not, judgment may enter on the remaining legal issues as a matter of law. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Thornton v. Evans,* 692 F.2d 1064, 1074 (7th Cir.1982). Applying this standard, we conclude, as did the District Court, that there are no genuine factual issues to be resolved and that the Company is entitled to judgment in its favor.

The four issues raised in this appeal are: 1) whether an oral settlement is binding in Title VII actions; 2) whether an enforceable oral settlement agreement was reached notwithstanding the parties' inability to agree on a written formulation of the settlement terms; 3) whether the claimed incompetence of Taylor's counsel prevented a knowing assent by Taylor to the agree-

---

**1.** In addition to the suit that is the subject of this appeal, Taylor had previously filed another discrimination suit, in 1978 or 1979. In it, he alleged that his then-employer, Cirves Electric, terminated him improperly. An MEOC fact-finding conference was held, in which a ruling was obtained in favor of the plaintiff. Taylor was not represented by an attorney at the conference. Later, however, Taylor withdrew his complaint, as a consequence of which no hearing on the merits was held.

ment which made the contract enforceable; and 4) whether the alternative settlement language proposed by Auen amounted to a repudiation of the oral agreement.

■ In asserting the first issue, Taylor claims that Wisconsin Statute § 807.05 requires that settlements be in writing in order to be binding upon the parties; thus, in this case, the oral agreement, if any existed, was not binding. However, we have previously held that federal law governs the enforceability of settlements in Title VII actions. *See Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir.1982). And, under federal law, oral settlement agreements are enforceable. *Id.* Recently, in *Glass v. Rock Island Refining Corp.*, 788 F.2d 450 (7th Cir.1986), a case presenting issues very similar to issues in this case, we upheld an oral settlement of Title VII claims, where the plaintiff entered into an oral settlement agreement, but later changed his mind and tried to withdraw from the agreement. We held that, if knowingly and voluntarily made, the oral settlement agreement was binding. *Id.*, at 454. Likewise, here, if Taylor orally agreed to settle his claims, and it appears from the uncontroverted facts that he did, the agreement is binding.

We turn next to the issue of whether an oral settlement agreement was reached. To constitute an enforceable oral contract, there must be an offer, an acceptance, and consideration to support the formation of a legally enforceable agreement. *Premier Electrical Constr. Co. v. Miller-Davis Co.*, 291 F.Supp. 295, 300 (N.D.Ill.1968), *aff'd*, 422 F.2d 1132 (7th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970). The offer, in order to be legally operative and to create a power of acceptance must contain all the terms of the contract to be made. *Id.* These terms must be "reasonably certain" and reasonably ascertainable from the acts and words of the parties. *Id.*

Resolution of this issue is simplified considerably by the fact that there is no dispute that the Company made an oral settlement offer which was accepted by Taylor and his counsel. However, Taylor argues that, because the written drafts of the verbal agreement which were exchanged between the attorneys differed, no final agreement was reached. Taylor's claim is without merit when considered in light of the undisputed facts of this case.

The respective drafts prepared by Taylor and the Company are very similar. The similarity evidences the intent of both parties that the settlement documents memorialize the agreement the parties had already reached. Each draft set forth the underlying facts upon which the agreement was reached, an acknowledgement that the parties continued to disagree on the merits of Taylor's claim, a statement that the Company would pay $1,300.00 to Taylor in exchange for his withdrawal of the pending complaint and his execution of a full release of all claims against the Company, an acknowledgement that Taylor was not entitled to any employment or reemployment with the Company, an understanding as to Taylor's last day of employment with the Company, a statement that the Company would not contest Taylor's eligibility to receive unemployment compensation benefits, a promise that the Company would furnish a letter of reference to Taylor, and an assurance by Taylor that these provisions represent the exclusive terms of the parties' final binding settlement.

■ Parties to a contract may or may not require, as a part of their agreement, that there be an agreed, written document setting forth the terms of their settlement before such a settlement can be deemed final. *See Lambert Corp. v. Evans*, 575 F.2d 132 (7th Cir.1978). The agreement between the parties to this action did not include any such provision. No part of their agreement was conditioned upon an acceptance of the written formulation of that agreement. The failure to include such a provision does not leave an unenforceable settlement. Rather, it simply leaves an agreement which, if not honored, a party will be forced to protect by proving the existence and terms of the oral agreement. Though in practical terms this proof may be difficult to make, the oral agreement is no less binding. Thus, Taylor cannot successfully claim that an enforceable oral agreement was not reached.

Third, we turn to Taylor's alleged failure to give knowing assent to the settlement agreement. Taylor first argues that one of the District Court's findings of fact is erroneous and, therefore, that the conclusion based on that finding relating to Taylor's knowledge or sophistication about the settlement process is also erroneous. Specifically, the District Court entered this finding:

31. Taylor, in 1978 or 1979, had another discrimination suit against his then-employer, Cirves Electric. He alleged unfair treatment by termination and the rehiring of a female employee at lower pay. A fact-finding conference was held, in which a ruling was obtained in favor of the plaintiff, but he decided to drop the case because he felt sorry for the employer. He was not represented by an attorney at the fact-finding conference involving Cirves Electric, where probable cause for discrimination was found to exist. A later hearing on the merits was not held because the plaintiff withdrew his complaint.

Then, in the accompanying memorandum, the District Court wrote: "Mr. Taylor has previously been involved in another similar discrimination proceeding with another former employer. He knew about the process and of those results which could be obtained."

■ Taylor argues that the finding of fact is inaccurate because Taylor's deposition testimony was that the MEOC found probable cause *after* the fact-finding conference, not *at* the conference. That distinction is of little significance, however, and as a basis for error, it is clearly harmless. Regardless of when the probable cause determination was made, Taylor had been a participant in prior employment discrimination-related proceedings. Thus, the conclusion that Taylor knew about the process and about potential results is accurate. We shall not disturb a district court finding which is consistent with substantial justice. *See Keaton v. Atchison, Topeka and Santa Fe R.R. Co.*, 321 F.2d 317, 319 (7th Cir.1963).

Taylor also argues that his assent was not knowingly given for the reason that, but for his lawyer's incompetent advice and counsel, he would not have agreed to this settlement. Her incompetent advice was allegedly damaging to Taylor in that it prevented his knowing the likelihood of prevailing on his claim and his knowing the implications of waiving claims against the Company.

■ Although stated in another legal context, the Court has previously defined "knowingly" as meaning "done voluntarily and purposely, and not because of a mistake or accident." *See United States v. Jones*, 696 F.2d 479, 493 (7th Cir.1982). Here, the record clearly shows that Taylor's assent to the settlement was not the result of a mistake or accident. Rona initiated the discussions at the July 18, 1984 settlement conference by making a substantial demand on Taylor's behalf. This demand was rejected by the Company, but settlement discussions continued throughout the morning. Rona consulted with Taylor throughout the discussions. Eventually, the Company made the offer set out in Section I of this opinion, which Taylor accepted. The attorneys then informed the MEOC that a settlement had been reached, and the case was removed from the MEOC calendar. Following the settlement conference, Taylor enjoyed the major benefits of the settlement agreement, including collecting unemployment compensation over a five-month period.

These undisputed facts demonstrate not only that Taylor knew settlement negotiations were being conducted, but also that Taylor was present for and participated directly in at least some of the negotiations. The record also establishes that Taylor, himself, accepted the Company's settlement offer, at the conclusion of the negotiations process. As such, his assent to the settlement clearly was not the result of a mistake or accident. Though Taylor's judgment as to the value of his claims may have been mistaken, his willingness to settle the claims was not. And, a party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement is insufficient. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450 (7th Cir.1986).

■ Taylor's claim that the incompetency of his counsel prevented his knowing assent to the agreement is misguided. Besides striking us as the sort of collateral attack that defies reasonable limits, we do not regard competency of counsel as a relevant factor for district courts to consider in evaluating whether a settlement is knowingly reached. To the extent that Taylor's decision may have been based upon the incompetency of his counsel, his remedy lies in an action for legal malpractice, not in an action seeking to renege on a settlement agreement. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). In sum, the district court correctly concluded that there was no genuine issue as to any material fact underlying Taylor's knowing assent to the settlement agreement.

■ Finally, we address whether the alternative settlement language proposed by Auen repudiated the oral agreement. Generally, a party must unequivocally declare his intent not to perform his obligation under a contract before he is said to have repudiated it. *See, e.g., Marr Enterprises, Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951 (9th Cir.1977). *Accord International Ass'n of Bridge, Structural & Ornamental Iron Workers v. Higdon Constr. Co., Inc.*, 739 F.2d 280 (7th Cir.1984). There was no such unequivocal declaration in the facts underlying this dispute.

As we have previously established, the changes Auen made in his revised draft of the agreement at most represented conflicts in the parties' attempts to memorialize their agreement. There is no evidence of the requisite, unequivocal declaration which would be capable of supporting a finding of repudiation. On the whole, Auen's changes were limited to grammatical, stylistic changes or word clarifications in Rona's initial draft. The only real modification was made in the provision regarding waiver of claims. Rona's draft stated that Taylor agrees to waive any claims regarding his employment or termination, whether such claims were known or unknown at the time of the agreement. Auen's draft stated that Taylor agrees to waive any claims occurring before or after the time of the settlement agreement because of alleged discrimination.

We agree with the District Court finding that the two drafts are entirely consistent in their meaning. Any claim that they are inconsistent because Auen's draft provides a release of all of Taylor's claims of any kind against the Company while Rona's draft provides only a release of all of Taylor's employment-related claims against the Company is immaterial in light of Taylor's concession that he had no nonemployment-related claims against the Company. In any event, any inconsistency which existed clearly did not amount to an expression by the Company that it did not intent to perform its obligations under the oral settlement agreement, many of which obligations it did, in fact, perform prior to the filing of this lawsuit by Taylor. The claim that the Company repudiated the agreement by submitting a revised draft is clearly without merit.

Accordingly, for all the foregoing reasons, the Order of the district court granting the Company's motion for summary judgment is AFFIRMED.