**Sherry DEGERMAN, Plaintiff,**

v.

**S.C. JOHNSON & SON, INC., Defendant.**

No. 93–C–1234.

United States District Court, E.D. Wisconsin.

Jan. 3, 1995.

Lisa Kane, Chicago, IL, for plaintiff.

Foley & Lardner by Susan Maisa and Deborah B. Ferry, Milwaukee, WI, for defendant.

---

### DECISION and ORDER

MYRON L. GORDON, District Judge.

Presently before the court is a motion by the defendant, S.C. Johnson & Son, Inc. ["S.C. Johnson"], seeking enforcement of a purported settlement agreement. In its motion, the defendant claims that it reached an oral settlement agreement with the plaintiff in this action, and that the plaintiff refuses to abide by the terms of such agreement.

### I. BACKGROUND

On November 10, 1993, the plaintiff filed a complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* In count I of her complaint, Ms. Degerman alleges that she was hired by S.C. Johnson, on August 1, 1977, to work in its corporate finance department. The plaintiff avers that in December 1988 she was promoted to the position of National Sales Administration Manager.

Ms. Degerman states that she was informed that, effective January 1989, she was to report to S.C. Johnson's new Business Development Manager, Tom C. Mortenson. In the remainder of count I, the plaintiff avers that she was sexually harrassed by Mr. Mortenson. For example, she claims that Mr. Mortenson spread false rumors about her sleeping with fellow employees.

Ms. Degerman claims that, as a result of Mr. Mortenson's harrassment over a period of about 30 months, she began seeing a psychiatrist because she was unable to deal with the pressure created by the situation. Ms. Degerman also alleges that other employees of the defendant failed to take action when she came to them for help regarding the situation with Mr. Mortenson.

In count II of her complaint, Ms. Degerman asserts a defamation claim. She claims that Mr. Mortenson made false statements about her to her co-workers to the effect that she was sleeping with a fellow employee and that she had performed oral sex on one of S.C. Johnson's distributors at a convention in Chicago.

As relief, the plaintiff seeks damages, as well as permanent injunctive relief. The plaintiff also asks that the court enter an order requiring that the employees of S.C. Johnson who are specifically named in the complaint be closely supervised, that a letter be directed to those employees "proscribing any and all unlawful conduct set forth here-

in" and that such letters be placed in the employment files of the named employees.

In February 1994, the parties informed the court that a settlement agreement was forthcoming. However, subsequent correspondence revealed that there was a dispute as to whether the plaintiff had in fact agreed to a settlement of her claims.

## II. ANALYSIS

 Oral settlement agreements in Title VII actions are enforceable under federal law. *Taylor v. Gordon Flesch Co., Inc.*, 793 F.2d 858, 862 (7th Cir.1986). A settlement agreement is a contract. *Air Line Stewards, Etc. v. Trans World Airlines*, 713 F.2d 319, 321 (7th Cir.1983). An enforceable oral contract requires an offer, an acceptance and consideration. *Taylor*, 793 F.2d at 862. An oral contract requires a meeting of the minds between the parties with respect to the essential terms of the agreement and an intention by the parties to be bound by the oral agreement. *See Superview Network v. SuperAmerica*, 827 F.Supp. 1392, 1396 (E.D.Wis.1993).

Our court of appeals has noted that when the settlement negotiations have been conducted through a party's attorney, such party must have " 'knowingly and voluntarily agreed to the terms of the settlement or authorized [her] attorney to settle the dispute.' " *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 452 (7th Cir.1986) (quoting *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981)).

While I believe that this motion does involve disputed issues of fact, I do not believe that an evidentiary hearing would assist the court in resolving this matter. The parties have already submitted affidavits from Ms. Kane, the plaintiff's attorney, and Ms. Maisa, the defendant's attorney. It is unlikely that an evidentiary hearing would elucidate facts beyond those which the parties have already presented in their affidavits.

 The court must determine whether the plaintiff did in fact enter into an oral settlement agreement with the defendant. The dispute focuses on a telephone conversation which took place between Ms. Kane and

Ms. Maisa on January 31, 1994. According to Ms. Maisa's version of the conversation, she went through all of the terms of the proposed settlement with Ms. Kane, after which Ms. Kane indicated that the terms were acceptable to her client.

According to the defendant, the major terms of the alleged settlement were as follows: 1) the company would not admit fault, 2) the company would pay $30,000 to the plaintiff and $5,000 to her attorney, 3) the defendant would not contest any claim for unemployment benefits made by the plaintiff, 4) both parties agreed to release each other from any claims, 5) the plaintiff agreed not to pursue any further legal proceeding against the defendant and also agreed to dismiss this action, as well as her pending state administrative complaint of employment discrimination, and 6) the defendant would be entitled to seek a payment of $30,000 from Ms. Degerman if she failed to maintain the confidentiality of the terms of the alleged settlement. S.C. Johnson asserts that the alleged settlement was memorialized in a written agreement which was sent to Ms. Kane for Ms. Degerman's signature.

The plaintiff contends that while a tentative agreement was reached during the telephone conversation of January 31, 1994, the parties never reached a final agreement. The plaintiff does not contest the fact that the parties reached an agreement on most terms of the alleged settlement. However, she asserts that a material term of the settlement agreement, the confidentiality clause, remained unresolved.

 The party seeking enforcement of an alleged oral agreement must prove the existence and terms of the agreement. *See Taylor*, 793 F.2d at 862. The actions of the parties can indicate the existence of an agreement. *See Ecologix, Inc. v. FanSteel, Inc.*, 676 F.Supp. 1374, 1379 (N.D.Ill.1988). The defendant points to several facts which it contends show the existence of a verbal settlement agreement.

S.C. Johnson avers that a written copy of the alleged settlement agreement was sent to Ms. Kane, the plaintiff's attorney on February 4, 1994. The defendant claims that, after

receiving the written copy of the alleged agreement, Ms. Kane contacted the court and requested cancellation of the status conference that had been scheduled for February 9, 1994, "because the parties had reached a settlement." On the other hand, Ms. Kane asserts that she cancelled the status conference because she believed that the parties were close to reaching a final settlement. While Ms. Kane's actions are consistent with an understanding that a settlement was forthcoming, they do not necessarily indicate that a final agreement had been reached. I do not believe that the request for cancellation of the status conference indicates that a final settlement had been reached.

S.C. Johnson next asserts that Ms. Kane, upon receiving the written agreement, indicated that all of the terms of the written agreement were identical to the terms which she had agreed to during her telephone conversation with Ms. Maisa. Ms. Kane denies this allegation and states that she told Ms. Maisa that the written agreement was generally consistent with the tentative verbal agreement, with the exception of the liquidated damages/confidentiality clause.

Both Ms. Maisa and Ms. Kane acknowledge that the liquidated damages/confidentiality clause was the subject of extensive negotiations, with Ms. Kane consistently arguing against inclusion of the clause in the settlement agreement. It is unlikely that Ms. Kane would suddenly accept a provision in the agreement when she consistently sought exclusion or modification of that provision throughout the settlement negotiations between the parties.

The defendant also points to the language of the cover letter which accompanied the written agreement as indicating that the written agreement was a memorialization of a previous oral agreement. Specifically, the language of the letter indicates that the written agreement was drafted "pursuant to the settlement reached in the above-captioned matter...." S.C. Johnson contends that Ms. Kane's assertion that she thought that the written agreement was merely a proposal is clearly inconsistent with the language of the cover letter. In response to the so-called "written agreement," Ms. Kane sent Ms. Maisa a request for changes to the language of the written agreement. I believe that Ms. Kane's response to the "written agreement" indicates that she did not believe that a final agreement had been reached.

S.C. Johnson claims that Ms. Kane expressed "her own frustration with her client's attempt to back out of the settlement" when she requested changes in the written document. Ms. Kane admits that she did express her frustration with her client. However, she asserts that she never told Ms. Maisa that her client was attempting to "back out" of an alleged agreement, as she did not believe that an agreement existed. In my opinion, Ms. Kane's prompt request for changes in the written document indicates that the parties did not agree to a final settlement.

The defendant contends that the plaintiff's failure to comply with the mandatory discovery provisions under Local Rule 7.07 further indicates the existence of a settlement agreement. Ms. Kane responds by stating that the reason that the plaintiff did not initiate discovery was that she believed that a settlement was imminent; the court deems this a logical position.

Finally, S.C. Johnson asserts that Ms. Degerman's filing for unemployment benefits in February 1994 is evidence of the existence of a settlement agreement. The defendant avers that Ms. Degerman's employment was terminated in October 1993. As stated above, one of the terms of the purported settlement agreement was that the defendant agreed not to contest the plaintiff's application for unemployment benefits. The defendant argues that Ms. Degerman's delay in filing for unemployment compensation until after the parties had allegedly reached a settlement, and S.C. Johnson's decision not to contest her claim for unemployment, indicate that the plaintiff agreed to a settlement of her discrimination claims.

Ms. Degerman's decision to file for unemployment compensation after the existence of the purported settlement does not show that the parties had reached a settlement agreement. The plaintiff filed her application for unemployment benefits nearly one month after the alleged settlement. If she thought

564

that a settlement had been reached, it is more likely that she would have filed for unemployment benefits immediately after such agreement. Therefore, I do not find the timing of Ms. Degerman's filing for unemployment benefits to be probative of the existence of a settlement agreement.

I do not believe that the defendant has met its burden of establishing the existence of an oral settlement agreement. The defendant has not established that Ms. Degerman voluntarily agreed to a settlement of her Title VII claims, nor has it established that Ms. Kane agreed to a settlement on the plaintiff's behalf. The defendant has failed to show that the parties had a "meeting of the minds" on all essential terms of the agreement.

### ORDER

Therefore, IT IS ORDERED that the S.C. Johnson's "motion to enforce settlement agreement" be and hereby is denied.