Lorraine **WISE**, Plaintiff,

v.

Richard W. **RILEY**, Secretary, U.S. Department of Education, Defendant.

No. CIV.A. 98–0995 JR.

United States District Court, District of Columbia.

July 18, 2000.

36

Lorraine E. Wise, Ellicott City, MD, for Plaintiff pro se.

Harry Lee, Patrick O'Donnell, Mark C. Elmer, Steptoe & Johnson LLP, Washington, DC, Former Counsel for Plaintiff.

Jennifer R. Rivera, William R. Kirschner, Martha E. Rubio, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Counsel for Defendant.

### MEMORANDUM AND ORDER

ROBERTSON, District Judge.

Before the Court are (1) plaintiff's motion to vacate an order issued on February 15, 2000 dismissing this case after the parties announced that they had settled, and (2) defendant's cross-motion for enforcement of a settlement agreement. For the reasons set forth below, I have concluded that the settlement agreement

reached by the parties on November 16, 1999, is enforceable and that the motion to vacate the order of dismissal must accordingly be denied.

*Facts*

Plaintiff Lorraine Wise brought this Title VII action against the Department of Education in April 1998, alleging race discrimination and retaliation. Certain of her claims were jury triable; others were not. On November 16, 1999, at the conclusion of a two-day bench trial of one count, and on the eve of the jury trial then set for the other two counts, counsel asked for a conference in chambers. In chambers, they represented that the case had settled. In reliance upon that representation, I took the jury trial off the calendar.

On November 24th, DOE counsel sent a draft settlement agreement to Ms. Wise's counsel. The agreement provided for DOE to pay $10,000 to Ms. Wise and $10,000 to her lawyers; remove all references to the AWOL and the 14–day suspension from Ms. Wise's personnel file; and convert the AWOL and 14–day suspension to leave without pay. Ex. 1 to Def.'s Mot. to Enforce (Def.'s Mot.). Ms. Wise was to dismiss her complaint and release the defendants.

Ms. Wise's counsel responded by letter that DOE's proposed release language was overly broad and that alternative language would make it clear that Ms. Wise was not relinquishing her rights to participate in an administrative class action against DOE. The letter also stated that the agreement should provide a timetable for DOE to issue the settlement checks, and it stated that counsel would "discuss with [Ms. Wise] whether she will insist on reinstatement of annual leave that would have accrued during the 14–day period that she was previously suspended." Ex. 2 to Def.'s Mot.[1]

DOE counsel sent a second draft settlement agreement to Ms. Wise's counsel on December 3, 1999. This one stated explicitly that Ms. Wise's rights to participate in an administrative class action would not be abridged by settling this case. The draft agreement also provided that DOE would "submit to the [Treasury Department] within five (5) days of the date of the Settlement Agreement becomes effective the necessary governmental forms to ensure prompt payment." Ex. 3 to Def.'s Mot.

On January 10, 2000, Ms. Wise's counsel notified government counsel that "Ms. Wise demands that [certain] changes be made." The proposed changes included further narrowing of release language throughout the agreement; a requirement that payment be made within ten days of the effective date of the settlement; a statement that DOE, not plaintiff, would be responsible for any monetary penalty stemming from converting the days of Ms. Wise's suspension to leave without pay; a statement that "[n]o copies of the AWOL or 14–day suspension will be forwarded or shared with any individual, group, organization or entity;" and a recitation that Ms. Wise's counsel waived any and all claims for attorneys fees. Ex. 4 to Def.'s Mot.

DOE's counsel replied to these new demands in a letter dated February 3, 2000, stating that he was "confused . . . in light of the fact that you and I had reached agreement on the contents of the Settlement Agreement." Nevertheless, he responded to Ms. Wise's demands seriatim. DOE agreed to change the "release" type language in certain parts of the agreement; to give assurances that Ms. Wise would not be held responsible for any "monies due" as a result of the conversion of suspension days to leave without pay; and to include a provision that Ms. Wise's law firm waived any and all claims for attor-

---

1. This minor point was the only one that appeared unresolved by the negotiations. The parties were called in for an unrecorded status conference on July 18, 2000, after which DOE agreed to reinstate the eight hours of Ms. Wise's annual leave that would have accrued but for the 14–day suspension.

neys fees. DOE refused to modify the agreement so that it would bar only future claims actually made in the complaint. DOE asserted that Ms. Wise had agreed to settle *"any and all* claims, with the exception of the putative administrative class action already carved out of the agreement." DOE also refused to guarantee payment on a date certain, explaining that the Treasury Department would be responsible for making the payment, and it refused to state categorically that information about this litigation would not be shared with any "individual, group, organization, or entity," explaining that the Freedom of Information Act prevented it from doing so. The letter stated that "the demands Ms. Wise is now making exceed the relief requested in her complaint," but expressed hope that DOE's "concessions" would lead to the prompt execution of the settlement agreement. Ex. 5 to Def.'s Mot.

On February 16, 2000, when no stipulation of dismissal had been filed three months after the parties declared that they had settled. I entered an order dismissing the case. Ten days later, Ms. Wise moved to vacate the dismissal. In her motion, Ms. Wise stated that the "trial of this matter was suspended on November 16, 1999, as a result of an agreement in principal [sic] reached by the parties," but she went on to state that "[c]ounsel have not yet been able to reach agreement ... concerning a finalized, written settlement agreement." Pl.'s Mot. to Vacate Dismissal at 1–2.

On April 11, 2000, Ms. Wise's counsel filed a notice to withdraw from the case, citing "irreconcilable differences" with the client. I convened a status conference on April 18, 2000, to discuss the motion to vacate and the motion of counsel to withdraw. During the status conference, which was conducted in chambers and unrecorded, Ms. Wise announced that she had another problem with the settlement agreement: she did not believe that her

$10,000 payment should be taxed. In response, her counsel indicated a willingness to divide the $20,000 in a manner that would make up for any taxes Ms. Wise would have to pay on her share of the settlement. I indicated that the motion to withdraw would be granted and sent the parties off to continue their negotiations, stating that, if negotiation were unsuccessful, the case would be reinstated on the trail calendar—if the government did not move to enforce the settlement agreement.[2] *See* Pl.'s Notice to Withdraw at 1–2.

The next day, DOE counsel forwarded a signed settlement agreement to Ms. Wise that purported to address the demands set forth in the January 10th letter of Ms. Wise's (former) counsel. This agreement provided for one payment of $20,000 directly to Ms. Wise but included, unchanged, the provision that she waive salary and benefits that she may have forfeited as a result of the AWOL designation and the 14–day suspension. *See* Ex. 6, Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Enforce (Def.'s Reply).

Ms. Wise replied on April 20th with another draft. This one simply incorporated the demands that DOE had refused: payment on a date certain, narrower release language, making the settlement amount tax free, and purging all references to the AWOL charge and the 14–day suspension from DOE's files. DOE counsel replied on April 26 that DOE could not sign Ms. Wise's draft, again explaining its reasons. Ms. Wise answered the next day, stating that "[t]he contents of your draft settlement is [sic] not in my best interest and does not reflect that to which I agreed the evening of the first day of trial in November, 1999." On May 8, DOE responded that its third—and final—version of the proposed settlement "reflects the agreement of the parties and addresses the issues the parties discussed with Judge Robertson during our conference on April

---

**2.** This order was not entered until April 28, 2000.

18, 2000." It urged Ms. Wise to review the settlement. Exs. 7–11, Def.'s Reply; Exs. D & E, Pl.'s Opp'n to Def.'s Mot. (Pl.'s Opp'n).

The record does not disclose whether Ms. Wise responded, but DOE's motion to enforce the settlement agreement followed shortly thereafter.

### Analysis

■ Oral settlement agreements in Title VII cases are fully enforceable. *See Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 862 (7th Cir.1986). "Absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). A plaintiff who consents to a settlement on the advice of counsel or whose attorney actively negotiates settlement on the plaintiff's behalf is presumed to have knowingly and voluntarily consented to settlement on the agreed terms absent fraud or duress. *See Pierce v. Atchison*, 65 F.3d 562, 571 n. 1 (7th Cir.1995). Ms. Wise makes no claim of fraud or duress.

By her own admission, Ms. Wise "knowingly and voluntarily" agreed to settle this case on November 16, 1999. Decl. for Lorraine Wise ¶ 3 (attached to Pl.'s Opp'n). She also concedes that she discussed the terms of the settlement with her lawyers and that she empowered them to settle the case, following the Court's "rulings and the unsuccessful arguments by counsel to counter them." Pl.'s Opp'n at 2. The attorneys representing DOE have also submitted sworn affidavits stating that the parties shook hands on the deal and considered the case settled when they left the courthouse on the evening of November 16, 1999. *See* Kirshner Decl. ¶¶ 7–9 (attached to Def.'s Mot.); Rubio Decl. ¶¶ 9, 11 (attached to Def.'s Reply).

■ A legally enforceable oral contract must contain all of the material terms of the contract, and those terms must be "reasonably ascertainable from the acts and words of the parties." *Taylor*, 793 F.2d at 862. However, "the fact that the exact language of a written settlement agreement had not been finalized does not demonstrate that the parties did not intend to be bound by their agreement." *Varga v. Baker*, No. 92–5064, 1993 WL 20073 at *1 (D.C.Cir. Jan.5, 1993). Parties to an oral agreement may *condition* their agreement upon their later acceptance of the written formulation of that agreement, but there is no suggestion that the oral agreement in this case included such a condition.

■ The material terms of the parties' oral agreement are readily ascertainable from the three drafts of the settlement agreement and the comments they engendered, as well as the oral representations of the parties. Those terms—that Ms. Wise and her counsel each would receive $10,000; that all information about the AWOL charge and the 14–day suspension would be removed from Ms. Wise's personnel file; and that the AWOL and suspension days would be converted to leave without pay—remained unchanged throughout the parties' negotiations over other details. Those terms were clearly offered and accepted, and the agreement they formed is enforceable, unless the other issues over which the parties negotiated—the precise nature of the release language, the expungement of certain information from Ms. Wise's personnel file, the tax consequences of the payments, and the date of payment—are so integral to the settlement that failure to reach agreement on them nullifies the oral agreement.

The exact wording of the release language appears to be Ms. Wise's most serious concern. At the April 18, 2000 status conference, indeed, it was my understanding that this was the *only* remaining unresolved issue. As a practical matter, how-

ever, this issue is a non-issue. Whether or not Ms. Wise signs a release, she will be precluded from bringing her discrimination claims against individual defendants, *see Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.1995) (Title VII does not provide for liability against individuals), and she will be precluded from litigating in a later case claims that were alleged in her complaint in this case.

Nor can Ms. Wise avoid the enforcement of the material terms of her agreement with DOE by insisting that DOE perform the impossible. It is neither feasible nor lawful for DOE physically to expunge all records of this case. It can— and will—remove references to the AWOL charge and the suspension from Ms. Wise's personnel record, but it must maintain a record of this settlement. The oral agreement was for DOE to expunge what it reasonably can.

Similarly, DOE cannot change the tax laws for Ms. Wise. The question of who will pay the tax she will incur on her portion of the settlement is between her and her former attorneys, and it will have to remain there.

The issue of the timing of the payment to Ms. Wise has been mooted by the passage of time. Only Ms. Wise's failure to abide by her agreement has prevented a check from being cut by the Treasury Department in a timely fashion.

It is accordingly this 18th day of July, 2000,

**ORDERED** that defendant's motion to enforce the settlement [# 78] is **granted.** Ms. Wise cannot be forced to sign a release, of course, but, upon presentation to the Court of proof that DOE has tendered $10,000 to Ms. Wise and $10,000 to her former counsel; that DOE has expunged all references to the AWOL claim and the 14–day suspension from Ms. Wise's personnel file; that DOE's records have been amended so that the AWOL and 14–day suspension are recorded as leave without pay; and that DOE has credited Ms. Wise

with eight hours of annual leave, an order will issue denying plaintiff's motion to vacate this Court's February 16, 2000 order of dismissal.