In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4034

JOSEPH BAPTIST, RICHARD BROOKS,
PRICE DUMAS, WILLIE HUNT, and
LAMONT UPTON,

*Plaintiffs-Appellants,*

*v.*

CITY OF KANKAKEE and MIKE KINKADE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03 C 2115—**Michael P. McCuskey**, *Chief Judge.*

ARGUED SEPTEMBER 15, 2006—DECIDED MARCH 19, 2007

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* The plaintiffs in this Title VII race discrimination case agreed in open court to settle their claims against the defendants in exchange for changes to hiring and promotional policies and $67,000 in attorney's fees. Shortly thereafter, they had a change of heart and sought to rescind their agreement on the ground that it was more beneficial to their counsel than to themselves. The district court denied their motion to vacate the agreed judgment order. On appeal, the plaintiffs

contend their agreement was not knowing and voluntary because their counsel failed to adequately advise them on the merits of the settlement in an effort to ensure payment of his fees. They also assert the agreement is unenforceable.

We reject these arguments and affirm. A plaintiff who enters into a Title VII settlement on the advice of independent counsel is presumed to have done so knowingly and voluntarily absent a claim of fraud or duress. Collateral arguments regarding the adequacy of counsel's advice cannot rebut this presumption. Apart from the force of this presumption, the district court did not abuse its discretion in evaluating the circumstances surrounding the settlement and denying the plaintiffs' motion to vacate the judgment. Finally, because an oral settlement agreement is binding if supported by consideration and there was consideration given here, the agreement is enforceable.

## I.  Background

The plaintiffs in this case are five African-American employees of the Kankakee Police Department. In July 2003 they sued the City of Kankakee and Police Chief Mike Kinkade alleging that the police department's promotional policies had discriminated against them on the basis of their race in violation of 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000e *et seq.* (Title VII). Plaintiffs' disparate treatment and disparate impact claims were bifurcated for trial, and a jury returned a verdict in favor of the defendants on the § 1983 and Title VII disparate treatment claims. Plaintiffs appealed that judgment. In the meantime, the district court scheduled the disparate impact claim for a bench trial to commence on September 12, 2005.

The parties appeared in court on the morning of September 12 and told the judge they were close to settlement. The court postponed the trial for a few hours so the parties could attempt to finalize negotiations. They returned later that morning and notified the court that they had reached a settlement, the terms of which were then read into the record by the defendants' counsel. Those terms included agreement by the City to engage in a number of practices to safeguard against discrimination, including establishing a "Blue Ribbon Committee" to review recruiting, testing, and promotional policies; employing an independent testing company for any hiring and promotional testing; and conducting annual cultural diversity training. The City also agreed to pay $67,000 in attorney's fees to the plaintiffs' attorney, Christopher Bent. In exchange, the plaintiffs agreed to dismiss with prejudice the disparate impact claims and their pending appeal of the § 1983 and disparate treatment verdict. They also agreed to execute a covenant not to sue regarding a 2005 promotional test and to dismiss a pending EEOC complaint regarding the test.

After the terms of the agreement were read in open court, defense counsel stated that he would put the agreement into writing. The following exchange then occurred:

> THE COURT: Okay. One of the things I do want to make certain on the record, Mr. Bent, this is an agreement that has been reached and agreed upon by all five plaintiffs, is that correct?
>
> MR. BENT: That's correct, Your Honor.
>
> THE COURT: And since I'm looking at all five and they're all looking at me, is anyone in disagreement with the statement that Mr. Bent said? That all of you are in support of this agreement, is that correct?
>
> They're all five nodding their head yes. So I won't go through the names like we're taking attendance.

Defense counsel then stated that the agreement was subject to approval by the City Council at its meeting in one week. The parties agreed on the record to execute the written agreement prior to the City Council meeting so it could be presented to the Council as a final document.

The next day, September 13, plaintiff Richard Brooks called Bent and expressed concerns about the agreement. On September 14 Brooks told Bent that he no longer agreed to the settlement and planned to hire new counsel. On September 22 Bent and the attorney for the defendants signed and submitted to the court an "Agreed Judgment Order" encompassing all the terms announced and agreed to in court on September 12. The district court entered the order that same day. On September 23 Bent filed a motion to withdraw as Brooks's counsel.

On September 30 the other plaintiffs told Bent that they did not intend to comply with the settlement, and they joined Brooks in obtaining new counsel. On October 2 the plaintiffs, now represented by new counsel, moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing that the settlement was manifestly unfair and unjustly enriched Bent. Each plaintiff filed an affidavit stating that he "did not [on September 12] understand that the settlement was one-sided and did not provide any remedy for past discrimination." Bent then immediately filed a motion to withdraw as counsel for all plaintiffs. In that motion he asserted that he had discussed the settlement terms with the plaintiffs in "excruciating detail" for two days and maintained "there was no ambiguity as to what rights the parties were being asked to waive" when they agreed to the settlement.

The district court granted Bent's motions to withdraw and denied the plaintiffs' motion to alter or amend the judgment. The court held that "[t]he record is crystal clear that Plaintiffs were advised of all of the terms of the

agreement in open court and expressed to this court their agreement with the terms." The court also stated that the agreement was "a good settlement for the Plaintiffs" and concluded that "second thoughts about the terms of the agreement . . . [are not] a valid basis for vacating." The plaintiffs appealed, arguing that (1) the district court failed to apply the correct legal standard to determine whether the agreement was entered into knowingly and voluntarily, (2) Bent engaged in misconduct, (3) the September 12 agreement was not enforceable, and (4) the September 22 agreement constituted a fraud on the court.

## II. Discussion

We review the district court's denial of a Rule 59 motion to alter or amend a judgment for abuse of discretion. *Britton v. Swift Transp. Co.,* 127 F.3d 616, 618-19 (7th Cir. 1997). Whether the court applied the correct legal standard is a question of law that we review de novo. The district court's determination that the plaintiffs knowingly and voluntarily settled their claims is a finding of fact that we will not set aside unless clearly erroneous. *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 455 (7th Cir. 1986).

### A. Knowing and Voluntary Settlement

We begin with plaintiffs' contention that the district court failed to properly analyze the totality of circumstances to determine whether they knowingly and voluntarily entered into the settlement. An employee's settlement of a Title VII claim must be knowing and voluntary. *See, e.g*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974); *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 862 (7th Cir. 1986). Whether a Title VII settlement is knowing and voluntary is a question of federal law. *Pierce v.*

*Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995). When an employee challenges whether a settlement was knowing and voluntary, "a court must examine the 'totality of the circumstances' surrounding [its] execution." *Id.* However, "where plaintiff is represented by chosen counsel throughout negotiations and settlement[ ] . . . [the settlement agreement] is presumptively informed and willing, absent circumstances such as fraud or duress." *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989); *see also Pierce*, 65 F.3d at 571 n.1 (reaffirming this holding).

The plaintiffs here were represented by independent counsel when they agreed to settle their Title VII claims; as such, the settlement agreement is presumed to be knowing and voluntary. *See Riley*, 881 F.2d at 373-74. The plaintiffs seek to overcome this presumption by claiming that their attorney engaged in misconduct, either by failing to adequately explain the terms of the settlement or by persuading them to enter into a settlement that was not in their best interests. But the adequacy or propriety of counsel's advice is irrelevant to the question of whether a settlement was knowing and voluntary. *Id.* at 374; *Taylor,* 793 F.2d at 863-64. "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping [a] suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962).

*Riley* and *Taylor* held that the adequacy of counsel's advice regarding settlement is an improper factor in evaluating whether a settlement is knowing and voluntary, *see Riley*, 881 F.2d at 374; *Taylor*, 793 F.2d at 864, and we now reiterate that this holding extends to all claims based

on the conduct or competence of plaintiff's chosen counsel.[1] Collateral attacks of this nature neither negate the presumption created by representation by counsel nor demonstrate the kind of fraud or duress capable of rebutting that presumption.[2]

Because the plaintiffs were represented by independent counsel and claimed neither fraud nor duress, the settlement agreement is presumed to be knowing and voluntary and the district court need not have evaluated the circumstances surrounding it. The district court examined all of the circumstances anyway. The court noted that Bent discussed the settlement in great detail with the plaintiffs over the course of two days, that the plaintiffs gave Bent their input on the terms, and that the parties were

---

[1] We have recognized the possible relevance of a claim that plaintiff's counsel *colluded* with the defendant to fraudulently induce settlement, or that *the court* denied a plaintiff adequate time to consult with counsel. *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d, 368, 374 (7th Cir. 1989). The plaintiffs make no such claims in this case.

[2] Fraud in the inducement is a claim against the opposing party; the plaintiffs have not claimed that *the defendants* fraudulently induced them to enter into the settlement agreement. Duress, too, is a claim against the other party to the contract, and it requires more than vexation, the stress of a difficult bargaining position, or financial pressure; duress requires "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness[es] of another." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995). Furthermore, a party asserting duress cannot prevail if he had an alternative to entering into the agreement. *Id.* The plaintiffs have not claimed the defendants took undue advantage of them. In any event, they had the option of taking their disparate impact claim to trial, and any claim of duress would necessarily fail.

given extra time to negotiate on the morning of trial. The court also noted that the terms were unambiguously presented to the plaintiffs during negotiations and discussed in open court, and that plaintiffs were given an opportunity on the record to voice opposition and instead indicated their assent. Finally, the court observed that the settlement reached was a good one for the plaintiffs given the burden they faced had they taken their case to trial. We have previously endorsed this sort of analysis for determining whether a settlement is knowing and voluntary.[3]

## B.  Enforceability of the Settlement

The enforceability of a Title VII settlement is a question of federal law, under which an oral settlement constitutes a binding contract if there was an offer, an acceptance, and consideration. *Taylor*, 793 F.2d at 862. Plaintiffs maintain that they received no consideration because the City only paid Bent's fees and provided no remedy for past discrimination.

"As long as the person receives something of value in exchange for her own promise or detriment, the courts will

---

[3]  In assessing the totality of the circumstances, we have stated that relevant factors include but are not limited to: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the agreement; (5) whether the employee actually read the release before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part. *Pierce*, 65 F.3d at 571.

not inquire into the adequacy of the consideration." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996); *see also Riley*, 881 F.2d at 375 (holding that defendant's agreement to refrain from seeking costs against plaintiff was sufficient consideration to enforce plaintiff's release of all claims). The plaintiffs unquestionably received value in exchange for the settlement of their claims. The agreement required the City to comply with a whole host of provisions regarding hiring and promotional policies, including conducting a review of the department's recruitment and promotional policies, retaining an independent firm for hiring and promotional testing, and implementing diversity training. The City also agreed not to count the day in court against the plaintiffs' vacation or sick leave and to pay $67,000 to cover the attorney's fees and expenses the plaintiffs had incurred in bringing their claims. There is no merit to plaintiffs' contention that the agreement was not supported by consideration merely because it did not provide them with every remedy to which they believe they were entitled. *See, e.g., Taylor*, 793 F.2d at 863 ("[A] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement is insufficient.").

The plaintiffs raise two other arguments challenging the validity of the September 12 settlement: that it lacked mutuality of obligation because it was subject to approval by the Kankakee City Council, and that it was not final until reduced to writing on September 22. These arguments, however, were not explicitly raised before the district court. Arguments not raised in the district court are waived on appeal. *See, e.g.*, *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002).

Finally, the plaintiffs contend that the Agreed Judgment Order of September 22 constituted a fraud on the court because Brooks had notified Bent in the interim that he intended to employ new counsel. This argument also

was not raised in the district court and is waived. In any event, the argument is irrelevant given our conclusion that the September 12 on-the-record oral settlement was binding and enforceable.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*