NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 26, 2007[*]
Decided October 1, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

No. 07-1401

| | |
|---|---|
| LAWRENCE STRONG, <br>     *Plaintiff-Appellant,* <br><br>     *v.* <br><br> HENRY M. PAULSON, JR., <br> Secretary of the Treasury,[**] <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br> No. 04 C 4971 <br><br> Robert W. Gettleman, <br> *Judge.* |

**O R D E R**

Lawrence Strong sued the Secretary of the Treasury, alleging that the Office of the Comptroller of the Currency (OCC) discriminated against him on the basis of his race (African American) and perceived disability (right-side weakness and limp) when it failed to offer him a position as a bank examiner. The district court granted summary judgment to the defendant, and Strong appeals. We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

[**] Henry M. Paulson, Jr., the current Secretary of the Treasury, has been substituted for his predecessor, John W. Snow. *See* Fed. R. App. P. 43(c).

Except as noted, the facts are undisputed. In August 2000 Strong applied for two positions with the OCC as a bank examiner. As part of his application, Strong submitted a resume and a self-assessment. Strong gave himself very high marks on the self-assessment, and the OCC's evidence showed that on the basis of that score, it selected Strong to advance to the next step in the hiring process, which was a communications test.

Upon arriving at the test site, Strong first spoke with Juanita Southern, the Regional Human Resources Manager. Southern noticed that Strong was slurring his speech and gave him a "strange" look. In response, Strong told Southern that he had suffered a stroke. Southern then told the examiners of the communications test that Strong was "disabled in some manner."

The communications test included both oral and written components. Strong testified that during the test, he "was asked very definitely by one of the interviewers named Jennifer Olson [Olds-Morgan] that [sic] what is wrong with my arm . . . which I answered. And she replied that, 'Long [sic] as it doesn't affect your mental coherency.'" After the test, the examiners noted that Strong's responses were unorganized and repetitive and that his "comments lacked substance." Nevertheless, the examiners advanced Strong to the final interview because of the impressive work experience listed on his resume.

Strong was then interviewed by Donelle Ward and Paul Ginger. The interview consisted of questions selected from a pre-printed form. Ward noted during the interview that Strong's responses lacked substance, were not responsive, and were rambling, unfocused, repetitious, and generally unprofessional. Ward testified that Strong's responses during the interview appeared inconsistent with the experience he listed on his resume; she therefore made a note to herself to check Strong's references. After the interview, Ward, with Ginger's concurrence, recommended to the hiring committee that Strong not be hired.

After exhausting his administrative remedies, Strong filed suit against the OCC. Count I alleged race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Count II alleged disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794(a). Count III alleged that the OCC improperly inquired about his perceived disability in violation of the Rehabilitation Act, 29 U.S.C. § 794(d) and 42 U.S.C. § 12112(d)(2)(A).

During discovery the OCC uncovered evidence that Strong had lied on his resume about his previous work experience. Strong claimed on his resume that he had worked for more than two years as a "Manager - Commercial Real Estate" for the Federal Deposit Insurance Corporation (FDIC) where he was responsible for "mortgage credit underwriting," "under[writing] mortgage portfolios," and "risk

management." Strong, however, had worked at the FDIC for only about eight months, and his former supervisor characterized Strong's statement of duties on his resume as a "blatant and complete lie." Strong also listed on his resume employment as a "residential lending manager" at Banco Popular when in fact he was a low-level mortgage underwriter.

The OCC then moved for summary judgment, to which Strong submitted little evidence in opposition. The most significant piece of evidence, which the district court failed to note, was Strong's own deposition testimony that Olds-Morgan had asked him what was wrong with his arm. The district court granted the OCC's motion for summary judgment, holding that Strong failed to produce evidence that the OCC's proffered non-discriminatory reason for not hiring him–namely, his exceptionally poor responses to questions during the interview–was pretextual.

Strong appeals from the district court's grant of summary judgment. We review de novo, construing all facts and drawing all reasonable inferences in favor of Strong as the non-moving party. *See Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

Because Strong does not attempt to prove discrimination through the direct method, he must proceed by the indirect method set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that method, if the plaintiff establishes a prima facie case of discrimination, a permissive inference of discrimination arises and the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). If the defendant succeeds, the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for discrimination. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). This framework applies to both the Title VII and the Rehabilitation Act claims. *Perez v. Illinois,* 488 F.3d 773, 776 (7th Cir. 2007) (Title VII); *Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. # 205*, 461 F.3d 932, 938 (7th Cir. 2006) (Rehabilitation Act).

The OCC does not challenge Strong's prima facie case, instead relying on its proffered reasons for not hiring him, namely, that his answers to questions during the interview lacked substance, were rambling and off-topic to the degree that one of the interviewers made a note to check Strong's references, and that his answers were non-responsive, unfocused and delivered in an unprofessional manner. In response, Strong argues (1) that the questions he was asked during the interview were unfair because they went beyond what was stated in a letter he received outlining the interview process; (2) that the head of human resources blocked his hiring for reasons that are not clear; (3) that evidence of the false statements on his

resume were manipulated by OCC's counsel; (4) that the interview was not objective; and (5) that Ward gave inconsistent reasons for her decision to recommend not hiring him. The first three of these arguments were not raised in the district court, and are therefore waived on appeal. *Baptist v. City of Kankakee*, 481 F.3d 485, 492 (7th Cir. 2007). The remaining two arguments are meritless.

First, we have held that nothing in Title VII requires a job interview to be scored against objective criteria. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002). Subjective analysis of the varying traits of each applicant is entirely appropriate. *Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005).

Second, we agree with the district court that Ward's statements explaining why she did not recommend hiring Strong were consistent. Ward first stated that Strong had difficulty formulating coherent answers and that those answers were rambling and repetitive. Later she said that Strong's answers to questions were unresponsive and unfocused, and still later Ward noted that Strong made confusing transitions, used words inappropriately, and jumped off topic. Because there is nothing inconsistent in Ward's statements, Strong has failed to prove that the OCC's reasons for not hiring him were pretextual. We therefore affirm the district court's grant of summary judgment on Counts I and II.

In Count III Strong alleges that the OCC violated the Rehabilitation Act by asking improper questions about whether and to what extent he was disabled. The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act of 1990 (ADA) to determine whether a violation of the statute has occurred. 29 U.S.C. § 794(d). The ADA prohibits covered prospective employers from asking about the existence or severity of an applicant's disability where the inquiry is not related to the applicant's ability to perform the job. *See* 42 U.S.C. § 12112(d)(2). Here, Strong testified that during the communications test, Olds-Morgan asked him what was wrong with his arm, and upon hearing Strong's response, stated "Long [sic] as it doesn't affect your mental coherency."

Even assuming that Olds-Morgan's inquiry was not covered by the exception for job-related questions, the district court's grant of summary judgment was proper. To prove a violation under 42 U.S.C. § 12112(d)(2), a plaintiff must demonstrate that he suffered some tangible injury-in-fact. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002) (collecting authority); *see also Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 561 (5th Cir. 1998). The injury here is the OCC's failure to hire Strong. We have concluded, however, that the OCC's failure to hire Strong was not discriminatory. Therefore, the district court correctly granted summary judgment on Count III.

AFFIRMED.